George D. OWEN, Plaintiff,

v.

CITY OF INDEPENDENCE, MISSOURI,
et al., Defendants.

Civ. A. No. 73CV138–W–3.

United States District Court,
W. D. Missouri, W. D.

June 25, 1976.

On Motion to Amend or Vacate and for
Additional Findings Aug. 2, 1976.

Irving Achtenberg, David Achtenberg, Kansas City, Mo., for plaintiff.

Richard G. Carlisle, Thomas D. Cochran, Independence, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT FOR DEFENDANTS

WILLIAM H. BECKER, Chief Judge.

This is an action under the Civil Rights Act of 1871, Section 1983, Title 42, United States Code, and under the Fourteenth Amendment to the Constitution of the United States. Plaintiff, George D. Owen (hereinafter "plaintiff"), contends that his prior employment as Chief of Police of Independence, Missouri, was terminated without notice of the reasons for the discharge or a hearing in violation of his rights to procedural and substantive due process under the Fourteenth Amendment, and that he was discharged in retaliation for his exercise of First Amendment rights. He seeks declaratory and injunctive relief to compel the defendants to grant him notice and a hearing, and equitable relief in the form of back pay and other fringe benefits from the date of his discharge to the date

the defendants grant him the notice and hearing he requests.[1]

Defendants are the present City Manager, Mayor, and members of the City Council of the City of Independence (hereinafter "City"); and the City itself. Defendants deny plaintiff's factual and legal contentions, and further assert that even if plaintiff's contentions are determined in his favor, defendants are not liable for damages because they, or their predecessors, acted at all times in "good faith." Defendant City also contends that subject matter jurisdiction does not exist with respect to plaintiff's claims against it.

After completion of the pretrial proceedings, a plenary evidentiary trial without a jury was held on May 17, 1976. The hearing was continued without objection from the parties to June 22, 1976, and was completed on that date. The parties have filed proposed findings of fact and conclusions of law and have fully briefed the legal issues. In order to expedite a final judgment, the following material findings of fact and conclusions of law are made based upon full consideration of the factual and legal contentions of the parties and the evidence presented.

I. *Findings of Fact.*

Plaintiff is, and at all times material was, a citizen of the United States and a resident of the State of Missouri.

Defendant City is a municipal corporation organized and existing under the laws of the State of Missouri. The City's government is organized in the council-manager form pursuant to a Missouri Constitutional Home Rule city charter adopted December 5, 1961, and amended April 4, 1972.

Defendant Lyle W. Alberg is the duly appointed and acting City Manager and Chief Administrative Officer of the City.

Defendant Richard A. King is the duly elected and acting Mayor of the City and a member of the City Council. He is the successor of Phil K. Weeks who was, on April 17, 1972, and prior thereto, the City's Mayor.

Defendants Charles E. Cornell, Dr. Ray Williamson, Dr. Duane Holder, Ray A. Heady, Mitzi A. Overman, and E. Lee Comer, Jr., are the duly elected and acting members of the City Council of the City. They are the successors of William A. McGraw, Lauzon H. Maxwell, Arthur W. Lamb, R. M. "Rudy" Bonville, Morris D. McQuinn and Paul L. Roberts who were the members of the City Council on April 17, 1972, and prior thereto.

Under Section 3.3(1) of the City's Charter, the City Manager is vested with the sole power to

"[a]ppoint, and when deemed necessary for the good of the service, lay off, suspend, demote, or remove all directors, or heads of administrative departments and all other administrative officers and employees of the city. . . ."

Plaintiff, as Chief of Police, was subject to this provision. The Charter did not provide that the Chief of Police was entitled to any notice of reasons, or a hearing, in connection with the termination of his employment.

The City Council, and its members, are prohibited from influencing, or interfering with in any manner, the City Manager's power of appointment and discharge of City employees. Section 2.11 of the City Charter provides that:

"[n]either the council, the mayor, nor any of its other members may direct the appointment of any person to, or his removal from office or employment by the city manager or by any other authority, or, except as provided in this charter, participate in any manner in the appointment or

---

1. In the original and amended complaints, plaintiff made other claims and prayers for relief, including reinstatement. The prayer for reinstatement has been abandoned because plaintiff is now disqualified by reason of his age to be Chief of Police. The claims and prayers for relief other than those considered herein were denied in the "Order Denying Plaintiff's Motion For Summary Judgment and Narrowing Issues For Evidentiary Hearing," filed February 6, 1975.

removal of officers and employees of the city. Except for the purpose of inquiry, the council, the mayor, and its other members shall deal with the administrative service solely through the city manager. . . . If the mayor or any other councilman violates any provision of this section, he shall be guilty of a misdemeanor, and upon conviction thereof, shall cease to be a councilman. . . ."

On February 20, 1967, plaintiff was appointed Chief of Police of the City for an indefinite term by then City Manager Robert L. Broucek. Prior to that time, he had served as an assistant to the Chief of Police of Kansas City, Missouri. Plaintiff was given no contract of employment, and there was no *de facto* tenure system which would have given him a reasonable or legitimate expectation of continued employment. Plaintiff served as Chief of Police until his employment was terminated effective April 19, 1972, by notice in writing of April 18, 1972, by the present City Manager Lyle W. Alberg.

For a substantial period of time prior to March, 1972, plaintiff and City Manager Alberg had had several sharp disagreements over plaintiff's administration of the Police Department, including but not limited to plaintiff's choice of people for positions in the Department and his administration of the Police Department's property room. In early March, 1972, a handgun, which had been destroyed according to records of the Department's property room, was discovered in the hands of a felon by Kansas City, Missouri, police. In about mid-March, 1972, City Manager Alberg initiated an investigation of the property room of the Police Department initially under plaintiff's direction. Later in March, 1972, Alberg decided that the investigation should be conducted by an independent branch of the city government. He transferred the two police officers who had begun the investigation, Sergeant Robert Jackson and Detective William Reynolds, to the City's Department of Law; and directed City Counselor James S. Cottingham who was head of the Department of Law to supervise the conduct of the investigation and to report the findings of the investigation directly to him.

On or before April 12, 1972, City Manager Alberg received copies of statements of witnesses secured in the investigation, and reports from the City Auditor and City Counselor Cottingham. The City Auditor reported that there were insufficient records in the Police Department property room to make an adequate audit of the property in the property room. Cottingham reported in writing to Alberg that there was no evidence of any criminal acts, or violation of any state law or municipal ordinances, in the administration of the property room.

At an informal meeting with several of the City Council members, which took place on or before April 10, 1972, City Manager Alberg discussed the investigation and told the City Council members that he would take action at an appropriate time to correct any problems in administration of the Police Department disclosed by the investigation. At that time, Alberg intended to keep the witness statements and details of the findings of the investigation confidential.

On April 10, 1972, Alberg communicated by telephone with plaintiff, who was then on vacation in Las Vegas, Nevada. Alberg told plaintiff he was dissatisfied with plaintiff's job performance, and asked plaintiff to resign as Chief of Police and accept another position in the Police Department. He told plaintiff that if he refused to accept another position in the Department, he would be discharged. Plaintiff requested a personal conference with Alberg in Independence the following day.

On April 11, 1972, Alberg and plaintiff met in Alberg's office in Independence. Alberg stated to plaintiff that he was dissatisfied with plaintiff's administration of the Police Department, including plaintiff's lack of supervision over the records section of the Department; the state of those records; and plaintiff's inadequate administration, and lack of control, of the property room which had resulted in the reappearance of supposedly destroyed property in

the hands of other people. Alberg again requested plaintiff to resign as Chief of Police, and to accept an advisory position with the Police Department. Plaintiff responded that he was not interested in another position, and that he would fight to remain Chief of Police. Alberg told plaintiff that if he continued to refuse to take another position, his employment with the City would be terminated.

On April 13, 1972, Alberg had a discussion with Lieutenant Lawrence L. Cook of the Police Department, during which he asked Cook if he would be willing to take the position of Chief of Police. Cook stated that he would. On the same day, Alberg released a public communication to the Mayor and City Council concerning the investigation and audit of the Police Department's property room, which stated:

"At my direction, the City Counselor's office, in conjunction with the City Auditor have completed a routine audit of the police property room.

"Discrepancies were found in the administration, handling and security of recovered property. There appears to be no evidence to substantiate any allegations of a criminal nature.

"Steps have been initiated on an administrative level to correct these discrepancies."

Alberg's statement was prominently reported by a local newspaper.

Alberg was away from Independence on the weekend of April 15 and 16, 1972. On April 15, he decided to replace plaintiff with Lieutenant Cook as Chief of Police. However, he did not inform anyone of his decision, and did not take formal action to implement his decision until April 18, 1972.

In Alberg's absence, Assistant City Manager Parley Banks became the Acting City Manager. During the weekend, City Councilman Paul L. Roberts requested copies of the reports of the audit and statements of witnesses secured in the investigation of the Police Department property room. Roberts had recently been defeated for re-election to the City Council, and his term was to expire following the meeting of the City Council on the evening of April 17, 1972. Banks, unaware of Alberg's intention to keep the details of the reports confidential, complied with Roberts' request and delivered the documents to Roberts without reading them.

During the weekend Roberts read the reports and unilaterally decided that their contents should be made public. He secretly drafted a statement to be made by him without prior notice to anyone, at the City Council meeting on the evening of April 17, 1972. The statement is described below.

An informal meeting was held on the morning of April 17, 1972, between Alberg and four members of the City Council, during which the investigation of the Police Department was again discussed. At that time, Alberg did not inform the council members of his intention to discharge plaintiff; and Councilman Roberts did not disclose his intention to make a statement concerning the investigation at the formal meeting of the City Council that evening.

On the evening of April 17, 1972, the City Council held a regularly scheduled meeting. The agenda of the meeting did not list a statement or motion by Councilman Roberts. After completion of the scheduled business, Councilman Roberts read his prepared statement. The statement alleged that plaintiff had taken two television sets from the property room of the Police Department for his own personal use; that numerous firearms in the custody of the Police Department had ". . . found their way into the hands of others including undesirables . . ."; that narcotics being held by the Department ". . . have mysteriously disappeared"; that traffic tickets had been manipulated; that inappropriate requests had been made by "high ranking police officials to the police court"; ". . . that things have occurred causing the unusual release of felons"; and the reports disclosed "gross inefficiencies on the part of a few of the high ranking officers of the police department." Councilman Roberts then moved that the reports be made public; that they be turned over to the Prosecuting Attorney of Jackson Coun-

ty; and that the City Council recommend to the City Manager

". . . that he should take all direct and appropriate action permitted under the Charter against such persons as are shown by the investigation to have been involved in illegal, wrongful, or gross inefficient activities brought out in the investigative reports, and to complete the investigation."

The full statement is set out in a marginal note.[2] After discussion of Councilman Roberts' motion, six members of the Council voted to approve the motion. Councilman McGraw abstained from voting on the motion.

On April 18, 1972, City Manager Alberg implemented his prior decision to discharge

plaintiff as Chief of Police. On that day plaintiff received a written notice from Alberg stating merely that his employment as Chief of Police was "[t]erminated under the provisions of Section 3.3(1) of the City Charter" effective April 19, 1972. Plaintiff requested that Alberg provide him with written notice of the reasons for the termination and a hearing in a letter to Alberg dated April 15, 1972. The letter was not received by Alberg until after plaintiff's discharge. Both the action of the City Council and plaintiff's discharge by City Manager Alberg were prominently reported in local newspapers.

After termination of plaintiff's employment, Alberg referred the investigation reports and statements to the Prosecuting

---

2. The statement, in its entirety, read:

"On April 2, 1972, the City Council was notified of the existence of an investigative report concerning the activities of the Chief of Police of the City of Independence, certain police officers and activities of one or more other City officials. On Saturday, April 15th for the first time I was able to see these 27 voluminous reports. The contents of these reports are astoundingly shocking and virtually unbelievable. They deal with the disappearance of 2 or more television sets from the police department and signed statement that they were taken by the Chief of Police for his own personal use.

"The reports show that numerous firearms properly in the police department custody found their way into the hands of others including undesirables and were later found by other law enforcement agencies.

"Reports whow (sic) that narcotics held by the Independence Missouri Chief of Police have mysteriously disappeared. Reports also indicate money has mysteriously disappeared. Reports show that traffic tickets have been manipulated. The reports show inappropriate requests affecting the police court have come from high ranking police officials. Reports indicate that things have occurred causing the unusual release of felons. The reports show gross inefficiencies on the part of a few of the high ranking officers of the police department.

"In view of the contents of these reports, I feel that the information in the reports backed up by signed statements taken by investigators is so bad that the council should immediately make available to the news media access to copies of all of these 27 voluminous investigative reports so the public can be told what has been going on in

Independence. I further believe that copies of these reports should be turned over and referred to the prosecuting attorney of Jackson County, Missouri for consideration and presentation to the next Grand Jury. I further insist that the City Manager immediately take direct and appropriate action, permitted under the Charter, against such persons as are shown by the investigation to have been involved.

"I have been advised that the City Manager has requested the resignation of the Chief of Police but to date the Chief has not done so. It should be noted that many persons in the Police Department have come forward in the investigation of these matters and have cooperated in this investigation and their efforts are recognized and appreciated. Because these investigative reports and statements have not been available to the news media, I respectfully move as follows:

"I move first that the Council instruct the City Manager to immediately make available to the news media access to copies of all the 27 volumimous (sic) investigative reports and the statements and attachments therewith.

"Second:

"That copies of the investigative reports be turned over and referred to the Jackson County Prosecuting Attorney for presentation to the next Grand Jury.

"Third:

"The City Council recommends to the City Manager that he should take all direct and appropriate action permitted under the Charter against such persons as are shown by the investigation to have been involved in illegal, wrongful, or gross inefficient activities brought out in the investigative reports, and to complete the investigation."

Attorney of Jackson County, Missouri, for consideration by a grand jury as recommended by the City Council. The grand jury subsequently returned a "no true bill." Since that time, neither City Manager Alberg nor the City Council made any further investigation of plaintiff's administration of the Police Department.

In April 1972, plaintiff's attorney requested a hearing on the reasons for plaintiff's discharge. The request was denied by Assistant City Counselor James L. Gillham by a letter to plaintiff's counsel dated May 3, 1972.

Plaintiff contends that his discharge on the day following Councilman Roberts' disclosure of details of the investigation and the City Council's actions has imposed a "stigma" of illegal or unprofessional conduct upon his personal and professional reputation which has impaired his ability to obtain future employment. However, defendants have shown by a preponderance of the evidence that the circumstances of plaintiff's discharge did not result in imposition of such a "stigma" for two reasons.

First, there was no causal relationship between the termination of plaintiff's employment and Councilman Roberts' statement and the action of the City Council. City Manager Alberg had decided prior to the City Council meeting to terminate plaintiff's employment. Alberg had sole responsibility for hiring and discharging the Chief of Police. City Council members were prohibited by law from taking any action to influence Alberg's personnel decisions. Roberts' statement and motion were unauthorized actions under the City Charter. (Plaintiff sued Roberts and Alberg in state court in an action for damages based on the defamatory statement of Roberts and the alleged attempt to procure criminal charges against the plaintiff. During trial of this state court action plaintiff settled with Roberts giving a general release of all liability of Roberts to plaintiff and agreed to drop Alberg as a party.)

Second, plaintiff was completely exonerated in writing from any charges of criminal misconduct arising out of the investiga-tion of the Police Department by City Counselor Cottingham, who was in charge of the investigation as head of the Department of Law, and by City Manager Alberg, who was the only City official with the power to terminate (or reinstate) plaintiff's employment. In his communication to the City Council on April 13, 1972, Alberg publicly stated, on the basis of the report of the City Counselor, that although there was evidence of inefficiency in administration of the Police Department, ". . . there was no evidence to substantiate any allegations of a criminal nature." At no time before or after plaintiff's discharge has City Manager Alberg or the City Counselor ever made any statements which imply that plaintiff's discharge resulted from criminal or other "stigmatizing" misconduct. Further, in addition to Alberg's statement, plaintiff was exonerated by the grand jury's return of a "no true bill" following its investigation of the charges made at the April 17, 1972, City Council meeting.

Plaintiff also alleged in the complaint that his discharge was in retaliation for exercise of First Amendment rights. However, there is no evidence in the record to support that allegation.

Although the foregoing factual determinations are sufficient to determine the issue of liability in favor of defendants, the material factual issues with respect to defendants' "good faith" defense will also be determined. Based on assumptions (without so finding) that "stigmatizing" charges made by Councilman Roberts were the basis for plaintiff's discharge, and that plaintiff was accordingly entitled to notice of the reasons for his discharge and a hearing under the Fourteenth Amendment, the material factual issues on defendants' "good faith" defense are (1) whether defendants knew, or reasonably should have known, that their refusal to grant plaintiff the requested notice and hearing violated plaintiff's rights under the Fourteenth Amendment; and (2) whether defendants acted with the malicious intention to cause a deprivation of rights guaranteed by the Four-

teenth Amendment, or other injury, to the plaintiff.

There is no evidence that the individual defendants knew in April, 1972, that a public employee who was discharged on the basis of serious allegations of illegal or immoral conduct was entitled by virtue of the Fourteenth Amendment to notice of the reasons for his discharge, and to an opportunity for a hearing to clear his reputation. Neither City Manager Alberg, nor any of the members of the City Council were attorneys. Alberg, Mayor Weeks, and Councilmen Maxwell, McGraw, Lamb and McQuinn all testified that they did not know in April, 1972 that such rights existed, and that they relied on the City's Department of Law for legal advice.[3] After receiving plaintiff's letter request for notice of reasons for his discharge and a hearing, Alberg directed an inquiry to the City's Department of Law to determine whether plaintiff was entitled to notice and a hearing. Alberg testified that at no time did City Counselor Cottingham advise him that plaintiff had a right to notice and a hearing under either the City Charter, state law, or the United States Constitution. Cottingham also advised Councilman McGraw and Councilman Roberts' successor, Dr. Eugene Theiss, that plaintiff had no right to a hearing; and Assistant City Counselor James L. Gillham gave the same answer to plaintiff's counsel in response to plaintiff's counsel's request for certification of plaintiff's discharge to the proper appellate board.

Further, the individual defendants have proven by a preponderance of the evidence that their belief that plaintiff had no right to notice and a hearing was reasonable. The United States Supreme Court first recognized that a public employee, who was discharged under circumstances imposing a "stigma" on his professional reputation and injuring his ability to find employment in the future, was entitled to notice and a hearing to clear his name in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33

L.Ed.2d 548 (1972), and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). These cases were decided on June 29, 1972, more than two months after plaintiff's discharge. The individual defendants cannot reasonably be charged with notice of the subsequent decision in these cases. Plaintiff presented no evidence that the individual defendants should have recognized the right to a hearing, under the circumstances, on the basis of any other controlling authority in existence in April, 1972.

Finally, there is no evidence that City Manager Alberg or the members of the City Council acted with malice in denying plaintiff's request for notice and a hearing. Alberg testified that his personal relationship with plaintiff was good despite his disagreements with plaintiff over plaintiff's administration of the Police Department. The City Council members all testified that they acted out of a good faith belief that the results of the investigation of the Police Department were matters which should be made public, and that they bore no ill will toward plaintiff personally. Their testimony is credible and is not substantially controverted by opposing evidence.

It is, therefore, factually concluded that plaintiff's employment as Chief of Police was not terminated under circumstances in which his reputation and prospects for future employment were damaged by allegations of immoral, illegal, or other "stigmatizing" conduct; that plaintiff's employment was not terminated in retaliation for his exercise of First Amendment rights; and that even if discharged under "stigmatizing" circumstances, the individual defendants acted in good faith in refusing to grant plaintiff's requests for notice of the reasons for his discharge and a hearing to clear his name because they neither knew, or reasonably should have known, of the existence of such rights under the Fourteenth Amendment, and did not act maliciously to deprive plaintiff of Fourteenth Amendment rights or to cause him injury.

---

**3.** Councilman Bonville is deceased.

## II. *Conclusions of Law.*

### A. *Subject Matter Jurisdiction.*

Subject matter jurisdiction over the claims against the individual defendants under Section 1983, Title 42, United States Code, exists under Section 1343(3) and (4), Title 28, United States Code.

■ However, Section 1983, Title 42, United States Code, does not create a claim for relief against the defendant City, because a municipal corporation is not a "person" within the meaning of that term as employed in Section 1983. *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Because Section 1983 does not provide a remedy against the City, Section 1343(3), Title 28, United States Code, does not provide a jurisdictional basis for an action against the City because that provision is linked to statutory claims for relief based on the Civil Rights Acts. *Herzbrun v. Milwaukee County,* 504 F.2d 1189 (7th Cir. 1974); *Ybarra v. Town of Los Altos Hills,* 503 F.2d 250 (9th Cir. 1974); *Patterson v. City of Chester,* 389 F.Supp. 1093 (E.D.Pa. 1975). *See also: United Farm. of Fla. H. Proj., Inc. v. City of Delray Beach,* 493 F.2d 799, 802 n. [1] (5th Cir. 1974).

■ Although subject matter jurisdiction does not exist over plaintiff's claims against the City under Section 1343(3) and (4), Title 28, United States Code, a number of federal courts have ruled in cases involving claims of denial of procedural due process in employment termination that jurisdiction over a political subdivision can be based on the general federal question statute, Section 1331, Title 28, United States Code, and on the Fourteenth Amendment to the Constitution of the United States, if the $10,000 amount in controversy requirement is satisfied. *Hostrop v. Bd. of Jr. College District No. 515,* 523 F.2d 569 (7th Cir. 1975); *Roane v. Callisburg Independent School District,* 511 F.2d 633 (5th Cir. 1975); *Skehan v. Board of Trustees of Bloomsburg State Col-*

*lege,* 501 F.2d 31 (3rd Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Williams v. Brown,* 398 F.Supp. 155 (N.D.Ill.1975); *Patterson v. City of Chester,* 389 F.Supp. 1093 (E.D.Pa. 1975); *Maybanks v. Ingraham,* 378 F.Supp. 913 (E.D.Pa.1974). *See also: Dahl v. City of Palo Alto,* 372 F.Supp. 647 (N.D.Cal. 1974). *But see: Weathers v. West Yuma County School District R–J–1,* 387 F.Supp. 552 (D.Colo.1974). These courts have implied a remedy against a political subdivision for violation of constitutional rights directly from the Fourteenth Amendment by applying and extending the theory of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See generally:* Note, "Damage Remedies Against Municipalities For Constitutional Violations," 89 Harv.L.Rev. 922, 929 (1976). Adopting the reasoning of these authorities, it is concluded that a claim for relief against the City of Independence can be based directly on the Fourteenth Amendment apart from Section 1983, Title 42, United States Code; and, therefore, that subject matter jurisdiction exists over the claims against the City under Section 1331, Title 28, United States Code, if the amount in controversy requirement is satisfied.

Defendants contend that the amount in controversy requirement has not been satisfied in this case. The general rule is that the amount in controversy must be determined from the complaint itself,

> "unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith . . . it 'must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'"

*Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890, 894 (1961); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Although the complaint does not contain a prayer for a specific dollar amount of back pay and damages, it does seek

". . . back pay, full rights to normal salary increases, and retirement benefits . . . [and] such further actual damages as may be established on hearing . . .."

At the trial, plaintiff clearly established that his back pay and damage claims exceed the $10,000 amount in controversy requirement, and are made in good faith. The complaint will be considered amended to state that plaintiff's claim for back pay and damages exceeds $10,000. Rule 15(b) of the Federal Rules of Civil Procedure. Therefore, it is assumed for the purpose of disposing of this action that subject matter jurisdiction exists of the claim for relief against the City of Independence under Section 1331, Title 28, United States Code, despite the doctrine of *Monroe v. Pape, supra.*

B. *Claim of Denial of Procedural and Substantive Due Process.*

Plaintiff contends that the termination of his employment without a notice of specific grounds for the termination and a hearing violated rights to procedural and substantive due process under the Fourteenth Amendment. However, the requirements of procedural due process apply only to a deprivation of interests which come within the Fourteenth Amendment's protection of "property" or "liberty," *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and the right to substantive due process is no greater than the right to procedural due process, *Buhr v. Buffalo Public School District,* 509 F.2d 1196, 1202 (8th Cir. 1975); *Evans v. Page,* 516 F.2d 18 (8th Cir. 1975). It must therefore be determined whether plaintiff was deprived of an interest in either "property" or "liberty" in connection with his discharge.

The types of property protected by the Due Process Clause vary widely and what may be protected under some circumstances may not be protected under other circumstances. To have a property interest in a benefit,

". . . a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

It is generally held that public office or employment, and in particular an appointed office or position, is not a property interest within the meaning of the Fourteenth Amendment. *See, e. g., Board of Regents v. Roth, supra; Abeyta v. Town of Taos,* 499 F.2d 323, 327 (10th Cir. 1974); *Lontine v. Van Cleave,* 483 F.2d 966 (10th Cir. 1973); *Burks v. Perk,* 470 F.2d 163 (6th Cir. 1972), *cert. denied,* 412 U.S. 905, 93 S.Ct. 2288, 36 L.Ed.2d 970 (1973). This general rule is inapplicable in situations when public employees hold contractual rights to continuing employment under formal or *de facto* tenure grounds. *Perry v. Sindermann, supra; Buhr v. Buffalo Public School District,* 509 F.2d 1196 (8th Cir. 1975); *Abeyta v. Town of Taos, supra.* Summary termination of such employment, without a hearing and notice of reasons, under such circumstances, may be actionable. *Wilderman v. Nelson,* 467 F.2d 1173 (8th Cir. 1973).

Plaintiff's claim that he was deprived of a property interest in his employment by his discharge, was tentatively dismissed for failure to allege any contractual or other *de facto* right to continued employment as Chief of Police in the "Order Denying Plaintiff's Motion For Summary Judgment and Narrowing Issues For Evidentiary Hearing" filed February 5, 1976, and hereby incorporated herein. At the trial, plaintiff did not present any credible evidence that he had either a contractual right to continued employment, or that there existed a *de facto* tenure system which gave plaintiff a legitimate expectation of continued employment. Rather, a preponderance of the evidence shows that plaintiff knowingly served as Chief of Police at the will of the City Manager and was subject to discharge without notice of reasons and a hearing at any time the City Manager determined that his discharge was "for the good of the service." It is therefore con-

cluded that plaintiff had no property interest in his employment as Chief of Police which would entitle him to procedural and substantive due process rights.

■ Deprivation of an interest in liberty occurs when the discharge of a public employee imposes upon him a stigma or other disability that impairs or forecloses his freedom to take advantage of other employment opportunities. *Board of Regents v. Roth, supra; Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515, 519 (1971). *Cf. Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), explaining limitations on the doctrine of *Wisconsin v. Constantineau, supra.*

■ To be "stigmatizing" the charges must be considerably graver than charges of improper inadequate job performance, or a failure to meet minimum standards of professional conduct. The charges must involve imputation of illegal, dishonest or immoral conduct which call the employee's good name, honor or integrity into question before a deprivation of liberty occurs. *Velger v. Cawley,* 525 F.2d 334 (2nd Cir. 1975); *Lake Michigan Col. Fed. of Teachers v. Lake Mich. Com. Col.,* 518 F.2d 1091 (6th Cir. 1975); *Russell v. Hodges,* 470 F.2d 212 (2nd Cir. 1972); *Springston v. King,* 399 F.Supp. 985 (W.D.Va.1975); *Muir v. County Council of Sussex County,* 393 F.Supp. 915 (D.Del.1975); *Bishop v. Wood,* 377 F.Supp. 501 (W.D.N.C.1973), aff'd. 498 F.2d 1341 (4th Cir. 1974), aff'd. 423 U.S. 890, 96 S.Ct. 185, 46 L.Ed.2d 121 (June 8, 1976). Further, to be "stigmatizing" the charges must have been made public in some intentional or official manner which affects the discharged employee's chances of securing another job. *Ortwein v. Mackey,* 511 F.2d 696 (5th Cir. 1975); *Buhr v. Public School District,* 509 F.2d 1196 (8th Cir. 1975); *Kaprelian v. Texas Women's University,* 509 F.2d 133 (5th Cir. 1975); *Wellner v. Minnesota State Junior College Board,* 487 F.2d 153 (8th Cir. 1973).

Plaintiff contends that because his discharge occurred the day following Councilman Roberts' public statement charging him expressly and by implication with gross misconduct of the administration of the Police Department, and the actions of the City Council which followed, a "stigma" was imposed on his professional reputation which has impaired or foreclosed future employment opportunities. The defendants, however, have disproved plaintiff's contention that the circumstances of his discharge imposed a "stigma" upon his reputation by a preponderance of the evidence for three reasons.

First, the only official reason ever given for plaintiff's discharge by City Manager Alberg, who possessed sole authority to hire and discharge the Chief of Police, was that plaintiff was "[t]erminated under the provisions of Section 3.3(1) of the City Charter." Thus, there are no statements in plaintiff's official record imputing any illegal, immoral, or other "stigmatizing" conduct to him.

Second, the statement made by Councilman Roberts and the actions taken by the City Council had no causal connection to the termination of plaintiff's employment. City Manager Alberg had decided prior to the April 17, 1972, City Council meeting to discharge plaintiff, and had even obtained a replacement for plaintiff before the meeting. Further, the City Council and its members were prohibited by the City Charter to attempt in any manner to influence City Manager Alberg's decisions about hiring and discharging city employees, including the Chief of Police, so their action was unauthorized.

Finally, prior to his discharge, plaintiff was completely exonerated from any charges of illegal or immoral conduct by City Counselor Cottingham, who supervised the investigation of the plaintiff's administration of the Police Department, and by City Manager Alberg, who possessed the sole power to hire and discharge the Chief

of Police. He was further exonerated subsequent to his discharge by the grand jury which was presented with the full investigative file referred to by Councilman Roberts in his public statement.

On the basis of the above findings of fact, it is concluded that the circumstances of plaintiff's discharge did not impose a stigma of illegal or immoral conduct on his professional reputation. At most, the circumstances of the termination of plaintiff's employment suggested that, as Chief of Police, plaintiff had been an inefficient administrator. Plaintiff was therefore not deprived of an interest in liberty in connection with his discharge, and accordingly he was not entitled to procedural due process rights under the Fourteenth Amendment.

C. *Claim That Discharge Was In Retaliation For Exercise of First Amendment Rights.*

Plaintiff contends that his employment was terminated in retaliation for his exercise of First Amendment rights. The Supreme Court has made clear that

". . . even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570, 577 (1972).

However, as factually found and herein legally concluded, plaintiff presented no evidence that he was discharged in retaliation for his exercise of any rights protected by the First and Fourteenth Amendments. The evidence presented by the defendants disproved this contention.

D. *"Good Faith" Defense.*

■ Recent decisions of the United States Supreme Court have established the existence of a "good faith" defense against personal liability for damages under Section 1983, Title 42, United States Code. *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The defense exists for persons exercising executive functions. *O'Connor v. Donaldson, supra; Scheuer v. Rhodes, supra.* It also exists for members of the city council. *See e. g.: Rasmussen v. City of Lake Forrest, Illinois,* 404 F.Supp. 148 (N.D.Ill.1975). *See also: Wood v. Strickland, supra; Mims v. Board of Education of City of Chicago,* 523 F.2d 711 (7th Cir. 1975); *Bertot v. School District No. 1, Albany County, Wyo.,* 522 F.2d 1171 (10th Cir. 1975); *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975). Because of their legislative functions the immunity of city council members may be even broader than that accorded by the "good faith" defense. *Compare: Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

■ Although the precise nature of the "good faith" defense as applicable to a city manager and members of a city council has not yet been fully explored or defined by the courts of appeals [4] or the Supreme Court, the defense has been defined in other contexts. Under the most strict formulation of the defense, applied to members of a school board in *Wood v. Strickland, supra,* 420 U.S. 308, at 322, 95 S.Ct. 992, at 1000, 43 L.Ed.2d 214, at 225, and applied to administrators of a state mental hospital in *O'Connor v. Donaldson, supra,* 422 U.S. 563, at 577, 95 S.Ct. 2486, at 2494, 45 L.Ed.2d 396, at 408, the material factual issues are whether the individual defendant

". . . 'knew or reasonably should have known that the action he took with-

---

4. *Lane v. Inman,* 509 F.2d 184 (5th Cir. 1974); *Nelson v. Knox,* 256 F.2d 312 (6th Cir. 1958) [Stewart, J.]; *Cobb v. City of Malden,* 202 F.2d 701 (1st Cir. 1953) (Magruder, J. concurring); *Smetanka v. Borough of Ambridge, Pennsylvania,* 378 F.Supp. 1366 (W.D.Pa.1974); *Bunch v. Barnett,* 376 F.Supp. 23 (D.S.D.1974); *Oberhelman v. Schultze,* 371 F.Supp. 1089 (D.Minn. 1974); *Young v. Coder,* 346 F.Supp. 165 (M.D. Pa.1972).

in his sphere of official responsibility would violate the constitutional rights of [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [plaintiff].' "

The Supreme Court has further emphasized that "[f]or purposes of this question, an official has, of course, no duty to anticipate unforeseeable constitutional developments." *O'Connor v. Donaldson, supra; Wood v. Strickland, supra.*

Had the individual defendants been sued in their individual capacities, defendants have clearly shown by a preponderance of the evidence that neither they, nor their predecessors, were aware in April 1972, that, under the circumstances, the Fourteenth Amendment accorded plaintiff the procedural rights of notice and a hearing at the time of his discharge. Defendants have further proven that they cannot reasonably be charged with constructive notice of such rights since plaintiff was discharged prior to the publication of the Supreme Court decisions in *Roth v. Board of Regents, supra,* and *Perry v. Sindermann, supra. See e. g.: Mims v. Board of Education of City of Chicago,* 523 F.2d 711 (7th Cir. 1975); *Bertot v. School District No. 1, Albany County, Wyo.,* 522 F.2d 1171 (10th Cir. 1975). Finally, the individual defendants have proven that they did not act with a malicious intent to deprive plaintiff of his constitutional rights or to cause plaintiff other injury.

However, the individual defendants have been sued only in their official capacities, and would, therefore, not be personally liable for any award of equitable relief in the form of back pay, or damages, regardless of their good faith. By suing the individual defendants only in their official capacities, and by joining the City of Independence as a defendant, plaintiff ultimately seeks relief from the City of Independence. The question presented is thus whether the City of Independence can assert a good faith defense based on the good faith of its agents against liability for claims based directly on the Fourteenth Amendment.

The purposes of the good faith defense are (1) to avoid the injustice of subjecting a public official who is required by the legal obligations of his position to exercise discretion to liability in the absence of bad faith; and (2) to encourage public officials to execute their offices with the decisiveness and judgment required by the public good. *Wood v. Strickland, supra,* 420 U.S. at 319–321, 95 S.Ct. at 999–1000, 43 L.Ed.2d at 223–224; *Scheuer v. Rhodes,* 416 U.S. at 241–242, 94 S.Ct. at 1688–1689, 40 L.Ed.2d at 99–100. Substantial arguments have been made that the reasons for permitting persons acting under color of state law to assert a good faith defense against personal liability are inapplicable to actions against a governmental unit. *See, e. g.:* Note, "Damage Remedies Against Municipalities For Constitutional Violations," 89 Harv.L.Rev. 922, 955–958 (1976). The United States Court of Appeals for the Seventh Circuit has ruled that damages for violation of a constitutional right can be recovered from a governmental unit even though the governmental unit's agents were protected from personal liability by a good faith defense. *Hostrop v. Board of Junior College Dist. No. 515,* 523 F.2d 569, 576–579 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976).

Nevertheless, the imposition of liability on a governmental unit because of the acts of public officials acting in good faith would also impair the ability of public officials to exercise their legal duties forthrightly as required by the public good. The distinction between imposing personal liability on the official and imposing liability on the public body or agency that he serves which underlies the argument against permitting a governmental unit to assert a good faith defense is not convincing. A conscientious public official's discharge of his duties will be impaired regardless whether liability is imposed on him personally or upon the public as a whole. The difference in impairment is one of degree. It is the fact of liability, rather than the party upon whom it is directly imposed, which should be the controlling factor. It

is therefore concluded that the City of Independence is entitled to assert a good faith defense against liability based directly on the Fourteenth Amendment; and that the City has established a good faith defense against liability in this action by proof of the good faith of the individual defendants who acted as the agents and officers of the City of Independence.

For the foregoing reasons, it is therefore

ORDERED and ADJUDGED that plaintiff's claims for relief be, and they are hereby, determined to be without merit. It is further

ADJUDGED that plaintiff be, and he is hereby, denied all relief prayed for in the complaint.

## ON MOTION TO AMEND OR VACATE AND FOR ADDITIONAL FINDINGS

Plaintiff has moved to amend the findings of fact and conclusions of law and for additional findings of fact. Plaintiff has also moved to vacate or amend the final judgment or in the alternative for a new trial. Defendants have filed opposing suggestions.

Plaintiff's motion to amend the findings of fact and conclusions of law and to make additional findings, and the supporting suggestions have been carefully reviewed. The additional findings requested in paragraphs 1, 2, 3, and 4, while substantially true factually, are adequately covered on page 10 of the memorandum filed June 25, 1976. The findings requested in paragraphs 5, 6, and 7 are not supported by substantial evidence. The findings requested in paragraphs 8 and 9 will be denied for the reasons stated below.

Plaintiff bases his motion to vacate or amend the final judgment, or in the alternative for a new trial, on three grounds. First, he contends that no ruling was made on the question whether plaintiff had a right to notice and a hearing under Missouri law, and that Missouri law requires notice and a hearing. Second, he contends that the evidence supports a finding that there was an implied contract that his employ-

ment would only be terminated for cause with notice and an opportunity for a hearing. Third, he contends that there was a sufficient nexus between Councilman Roberts' statement and the actions of the City Council on April 17, 1972, and his discharge on April 18, 1972, to support a finding that "stigmatizing" charges were made "in the course of" the termination of his employment.

### (1) *State Law.*

The United States Supreme Court has recognized that a public employee has a "property" interest in his continued employment if state law guarantees a right to notice and hearing in connection with the termination of his employment. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (June 10, 1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff contends that under Missouri law, because he could only be discharged "for the good of the service," he was entitled to notice and a hearing.

Contrary to plaintiff's allegation that no ruling has been made on this contention, the contention was expressly rejected on page 17 of the "Order Denying Plaintiff's Motion For Summary Judgment And Narrowing Issues For Evidentiary Hearing," filed February 5, 1976. However, because of the importance of this issue, the reasons for that ruling will be more fully stated herein.

Article 7, Section 4, of the Missouri Constitution of 1945 provides in pertinent part that ". . . all officers not subject to impeachment shall be subject to removal from office *in the manner and for the causes provided by law.*" (emphasis supplied) The Chief of Police of the City of Independence is not subject to impeachment under the Missouri Constitution, and thus Article 7, Section 4, was applicable to plaintiff. *Cf. State v. Williams,* 346 Mo. 1003, 144 S.W.2d 98 (1940). The principal issue in this case is what the applicable "law" is.

The city government of the City of Independence is organized in the council-manager form under a "home rule" charter authorized by Article 6, Section 19, of the Missouri Constitution of 1945. Article 6, Section 22, of the Missouri Constitution of 1945 provides in pertinent part that

> "[n]o law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment, for any city framing or adopting its own charter under this or any previous constitution . . . ."

This provision was intended to give "home rule" charter cities a "broad measure of complete freedom from State legislative control [over municipal employment decisions]." *State v. Cervantes,* 423 S.W.2d 791 (Mo.1968). *See:* Schmandt, "Municipal Home Rule In Missouri," 1953 Wash.U.L. Quarterly 385, 406 (1953). *Cf. City of St. Louis v. Missouri Commission on Human Rights,* 517 S.W.2d 65 (Mo.1974). This constitutional provision is persuasive authority that the applicable "law" governing the employment decisions of charter cities is the charter itself, and not state statutes or prior judicial law. This ruling is consistent with the Missouri "home rule" concept that matters of local interest are to be governed solely by the charter. *See:* Westbrook, Municipal Home Rule: An Evaluation of the Missouri Experience, 33 Mo.L.Rev. 45 (1968).

The Charter of the City of Independence (hereinafter "Charter") classifies municipal employees into the "classified" and "unclassified" service. Section 3.28 of the Charter expressly provides that an employee in the "classified" service shall have a right to notice and a hearing prior to the termination of his employment. Section 3.1 of the Charter accords similar rights to the City Manager. However, no such rights are expressly provided to heads of administrative departments such as the Chief of Police. The only provision in the Charter pertaining to the manner of and grounds for, the discharge of the head of an administrative department is Section 3.3(1) which authorizes the City Manager to

> "[a]ppoint, and when necessary for the good of the service . . . remove all directors or heads of administrative departments. . . ."

Plaintiff argues that in spite of the fact that heads of administrative departments are not *expressly* accorded rights to notice and a hearing, such rights are to be *implied* from the fact that heads of administrative departments were made dischargeable only "when necessary for the good of the service." However, from Sections 3.28 and 3.1 of the Charter, it is clear that the drafters of the Charter knew how to expressly provide for rights to notice and a hearing when such rights were intended. In view of the express provision of such rights to other employees, it is unlikely that the drafters intended to accord heads of administrative departments such rights by implication through use of the phrase "for the good of the service." Rather the absence of an express provision of such rights is persuasive evidence that no such rights were intended to exist.

Plaintiff has cited several early Missouri cases in support of his contention that an employee dischargeable only "for cause" or "for the good of the service" is entitled to notice and a hearing prior to his discharge.[1] However, these cases are distinguishable on their facts from this case.[2] To the extent

---

1. *State ex rel Eckles v. Kansas City,* 257 S.W. 197 (Mo.App.1923); *State ex rel Reid v. Walbridge,* 119 Mo. 383, 24 S.W. 457 (Mo.1893); *State ex rel Denison v. City of St. Louis,* 90 Mo. 19, 1 S.W. 757 (Mo.1886).

2. In *State ex rel Eckles v. Kansas City, supra,* a discharged district inspector for the water department of the City of Kansas City petitioned for a writ of mandamus to compel the City of Kansas City to restore him to his position. The only reasons given for his discharge were "[r]eduction in force and good of the service." However, there was substantial evidence that he had been discharged because of his political affiliation. [*Cf. Elrod v. Burns,* —— U.S. ——, 96 S.Ct. 2673, 49 L.Ed.2d 547 (June 28, 1976)]; and that his discharge was intended to be final. The City of Kansas City had a "complete civil service law governing tenure positions held by city employees" which was applicable to the discharged employee whose position in the competitive class of the city service was similar

that dicta in those cases, when read out of context, seems to support plaintiff's contention, those cases are not considered applicable. As stated above, the applicable "law" in this case is the Charter of the City of Independence, which clearly does not provide rights to notice and a hearing, and not state statutory or judicial law which may be to the contrary.

For these reasons, it is concluded that plaintiff was accorded no right to notice or a hearing by Missouri law.

### (2) *Allegation of "Implied" Contract.*

Plaintiff contends that the evidence shows that although he had no express rights to notice and a hearing under the Charter, and no contract of employment, he was employed with the understanding that his employment would only be terminated for cause with notice and a hearing. He further contends that this "understanding" gave rise to a legitimate expectation of continuing employment sufficient to constitute a "property" interest.

However, the evidence not only fails to support this contention, but in fact refutes it. Plaintiff was employed with the understanding that he served at the will of the City Manager. He had no "legitimate expectation of continuing employment."

### (3) *Whether "Stigmatizing" Charges Were Made "In The Course Of" The Termination Of Plaintiff's Employment.*

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court in construing *Board of Regents v. Roth, supra,* stated:

"Thus, it was not thought sufficient to establish a claim under § 1983 and the

---

to that of the "classified" service of the City of Independence in this action. The applicable charter provision provided:

"No person in the city's service shall be removed . . . because of political . . . beliefs of such persons; nor shall any person in the competitive class of the city service be removed . . . without first having received a written statement setting forth in detail the reasons therefore. * * * In case of discharge of any person owing to the reduction of force, the discharged person shall receive a certificate so stating, and shall be placed on the eligible list with the same rank he had already attained, and shall have a preference over those on the eligible list, and those who have served the longest before being so discharged shall be first restored."

The writ was granted to compel the City of Kansas City to restore the discharged employee to his job because he had been discharged for political reasons, no detailed statement of the reasons for his discharge had been granted, and his name was not placed on the "eligible" list all in violation of the above charter provision. This case is distinguishable because it involved an employee with tenure under the civil service law, and the charter expressly gave him a right to a detailed statement of the reasons for his discharge, while plaintiff Owen was dischargeable at will and was accorded no right to notice and a hearing by the Charter of the City of Independence.

In *State ex rel. Denison v. City of St. Louis, supra,* a discharged police justice brought an action to test the validity of a resolution of the council of the municipal assembly of St. Louis which removed him from office. Police jus-

tices were appointed by the mayor for a term of four years unless removed "for cause." Because he could only be removed from office prior to the expiration of his four year term of office "for cause," a right to notice and a hearing were implied.

The Court expressly noted, however, that "[w]here an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing." Plaintiff Owen, in contrast to the police justice who was appointed for a term of years, served at the will and pleasure of the city manager.

Finally, in *State ex rel. Reid v. Walbridge, supra,* the commissioner of public buildings of St. Louis petitioned for a writ of prohibition to prohibit the mayor of St. Louis from trying him on charges of dereliction of duties prior to his removal from office as provided by the charter. He contended that a state statute enacted subsequent to the charter provision, which provided a procedure for forfeiture of public employment to be initiated by the prosecuting attorney, had repealed the charter provision authorizing the mayor to prefer such charges by implication. Thus, the charter in that case, contrary to the Charter of the City of Independence, expressly provided a right to a hearing. It should again be noted that each of these cases was decided prior to the adoption of the Missouri Constitution of 1945 which, as more fully stated on pages 3 and 4, *supra,* provides that the governing law on the rights of an employee of a charter city is the charter alone and not prior statutory or judicial law.

Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur *in the course of* the termination of employment." (emphasis added)

Plaintiff contends that the evidence is sufficient to show that the alleged "stigmatizing" charges made by Councilman Roberts and actions of the City Council on April 17, 1972, were made "in the course of" the termination of plaintiff's employment.

However, this contention was rejected because the evidence shows that the decision to terminate plaintiff's employment was made at least seven days prior to the April 17, 1972, City Council meeting by City Manager Alberg, who had publicly exonerated plaintiff from all charges of criminal conduct. There was no causal or other substantial connection between the events which occurred at the April 17, 1972, City Council meeting and plaintiff's discharge.

For the foregoing reasons, it is therefore

ORDERED that plaintiff's motion to amend the findings of fact and conclusions of law and for additional findings be, and it is hereby, denied. It is further

ORDERED that plaintiff's motion to alter or amend judgment, or in the alternative for a new trial be, and it is hereby, denied.