434 F.Supp. 1063 (1977)
John TURANO, Plaintiff,
v.
BOARD OF EDUCATION OF ISLAND TREES UNION FREE SCHOOL DISTRICT NO. 26, and Richard Ahrens, William Richter, John Liberatore, Frank Martin, Richard Melchers, John Lively and Christine Fasullo, Individually and as members of the Board of Education of Island Trees Union Free School District No. 26, Defendants.
No. 75C 606.
United States District Court, E. D. New York.
July 15, 1977.
*1064 James Brady, New York City, for plaintiff.
Geo. W. Lipp, Jr., Babylon, N.Y., for defendants.

DECISION and ORDER
THOMAS C. PLATT, District Judge.
In a second amended complaint plaintiff sues for a mandatory injunction reinstating him to his position as a teacher in the public schools of the Union Free School District No. 26 (defendant "School District") nunc pro tunc as of January 3, 1975. As an adjunct to such equitable relief plaintiff seeks the back pay to which he would have been entitled from said date to this had his probationary service not then been terminated. Since this first claim of the plaintiff seeks primarily injunctive or equitable relief, there appears to be little, if any, question at present that it is maintainable at least against the members of the Board of Education to restrain them "from taking action in [their] official capacity" since fictionally the suit lies "against the individual officer and not against the state." Monell v. Department of Social Services of the City of New York, 532 F.2d 259, 265 (2d Cir. 1976), cert. granted, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
In view of the dispositions hereinafter made on the merits, it is not necessary at this time to determine whether plaintiff pleaded and proved a case under 28 U.S.C. § 1331 and the Fourteenth Amendment. Cf. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); City of Kenosha v. Bruno, 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Brault v. Town of Milton, 527 F.2d 730 (2d Cir. 1975), modified on other grounds 527 F.2d 736 (2d Cir. 1975); Santore v. The Civil Service Commission (No. 76 Civ. 1695) (S.D.N.Y. April 4, 1977); and see Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Fine v. City of New York, 529 F.2d 70 (2d Cir. 1975), nor need we discuss further the question of whether the defendant Board of Education is a person within the meaning of 42 U.S.C. § 1983. See Monell v. Department of Social Services of the City of New York, supra; Turano v. Board of Education of Island Trees Union Free School District No. 26, 411 F.Supp. 205 (E.D.N.Y.1976).
The same is true with respect to the second claim contained in plaintiff's second amended complaint insofar as such claim purports to be based on a deprivation of property without due process of law under Title 28 U.S.C. § 1343(3) and (4), and Title 42 U.S.C. § 1983, or Title 28 U.S.C. § 1331, and the Fourteenth Amendment to the United States Constitution. Again, our disposition on the merits renders it unnecessary for us to determine the more difficult question of whether the alleged failure to give appropriate notice of termination of *1065 employment to a non-tenured teacher under a union contract constitutes a "property" right which is protected by the Fourteenth Amendment.
Turning then to the facts, the parties stipulated to the following:
1. Plaintiff, John Turano, is a citizen of the State of New York, and at all times relevant herein the holder of a license as a teacher issued by the State of New York.
2. Defendant Board of Education of Union Free School District No. 26 is a municipal body established under the Education Law of the State of New York to administer the schools within that School District.
3. Defendants Richard Ahrens, William Richter, John Liberatore, Frank Martin, Richard Melchers and John Lively were at all times relevant herein duly elected members of the Board of Education of Island Trees Union Free School District No. 26, and are responsible for the operation of the School District.
4. Plaintiff obtained the license of teacher issued by the State of New York by successfully passing a competitive examination for such license and by being appointed to a position in the public schools of the Union Free School District No. 26.
5. During the course of plaintiff's probationary service, he was rated satisfactory and given excellent evaluations by his principal.
6. Based upon such rating, the superintendent of the district recommended that the plaintiff be granted tenure.
7. At the public meeting of the defendant Board of Education of Island Trees U.F.S.D. No. 26 held on November 26, 1974, the Board members present voted (4-1) to terminate the services of plaintiff effective January 3, 1975.
8. Defendant Board member William Richter petitioned the New York State Commissioner of Education Ewald Nyquist to remove four of the board members and dissolve the Board based on a number of incidents including the denial of tenure to plaintiff, in which Mr. Richter charged that he was denied information regarding the reasons for the denial of tenure. The Commissioner of Education dismissed such petition on the merits.
9. The contract between the Island Trees Teachers Association and the defendant Board of Education in Article XVIII-C-1-b provides as follows:
"Non-tenure teachers will be notified of termination of employment not later than May 15th, except that for the tenure year, the teacher will be notified not later than March 15th, prior to completion of probationary period."
10. At a public meeting of the defendant Board of Education on December 19, 1974, the plaintiff requested the reasons for the denial of tenure and his termination.
In addition to the foregoing, the proof showed that the plaintiff was employed by the defendant, School District in January of 1972 and that his probationary term expired on or about January 3, 1975.
With respect to plaintiff's first claim, what took place at the regular meeting of the defendant Board of Education on November 26, 1974, and the special meeting of such Board on December 19, 1974, is crucial to plaintiff's claim of stigmatization and deprivation of his "liberty" in connection with the Board's denial of tenure to him. On this question, the Court credits the testimony of the former Superintendent of the defendant School, Dr. Richard C. Morrow, who, if anything, was partial to the plaintiff in that he recommended to the defendant Board that the plaintiff be given tenure and rated and praised his past performance very highly.
Dr. Morrow testified that the Board and he took the precaution of listing and referring to all personnel actions by category and number rather than by name to insure that all action taken by the Board in connection therewith would be kept confidential.
Dr. Morrow testified further that at an Executive Session of the defendant Board *1066 held on November 19, 1974, he recommended tenure for the plaintiff and was advised by several Board members that they intended to vote against such recommendation and that when he [Dr. Morrow] asked why, he was not given any reason therefor.
At the formal meeting a week later on November 26, 1974, Dr. Morrow said that he read a short statement which was highly laudatory and supportive of the plaintiff (and which later became a part of plaintiff's personnel file) and the defendant, John Liberatore, also made a statement in support of the plaintiff. Notwithstanding these recommendations, the defendant Board members voted four (4) to one (1) [Liberatore dissenting] to deny tenure to the plaintiff.
In the discussion which ensued in which the defendant Liberatore sought the reasons of the Board members who voted negatively on the question, Mr. Liberatore revealed the plaintiff's name to the members of the public who were attending the meeting. In answer to his demands for reasons, the other members of the Board asked the Board's attorney whether they were required to state reasons and received a negative reply.
Contrary to plaintiff's claims, Dr. Morrow was quite positive that no statement was made at this meeting by any Board member that they could not give the reasons for the denial of tenure because the same would be damaging to the plaintiff.
Between the two meetings the plaintiff concededly (i) commenced a proceeding on December 12 before the New York State Human Rights Commission charging the defendant Board with denying him tenure solely because he was an Italian American and (ii) was approached by Walter Compari, the President of the Teachers Association or ("Union") for the purpose of bringing a suit on plaintiff's behalf in order to compel reasons to be given by the defendant Board to probationers such as the plaintiff who were dismissed at the expiration of their term and this resulted in the commencement of the instant action.
Plaintiff also conceded that the defendant Board was divided into two factions, one of which consisted of the defendants Liberatore and Richter who were allied with the Union and opposed to the majority of the Board and that he had been used as "a pawn" by the minority faction.
On December 4 the Union issued a flyer to its members urging them to attend a demonstration at the school on the following day protesting the termination of the plaintiff and such demonstration occurred with attendant publicity.
On the demand of Mr. Liberatore a special meeting of the Board was convened on December 19, 1974, for the purpose of reconsidering the vote on the denial of tenure for the plaintiff and a heavily pro-plaintiff crowd was present. Mr. Liberatore and the crowd repeatedly and noisily demanded reasons for the majority's decision not to grant tenure to the plaintiff and were repeatedly advised by the majority that under the law they were not obligated to give and would not give the reasons for such denial.
In his testimony before the Human Rights Commission plaintiff admitted that he himself had asked the Board to give the reasons for their failure to grant tenure.
The plaintiff claimed that the defendant Martin told the assembled crowd that the reasons for the denial would not be given because the same would damage plaintiff's reputation. He said further that the defendant Martin referred to a tape of a parent complaining about the plaintiff, that he held the same in the air and that, although the crowd asked him to play the tape, he did not do so. Dr. Morrow said, however, that Mr. Martin had a prepared statement which he read to the crowd and testified that that was his only statement with respect to "anyone's reputation". The pertinent portion of such statement apparently reads in part as follows:
"The second reason for avoiding public exposure is for the protection of the teacher. Unlike actions of the past Boards, it is not our intention to destroy anyone's reputation. To reveal reasons *1067 would help no one but the Board of Education. It is being said that the action of the Board is political and of a personal nature. This is not true. You can easily see it would have been far better politically for the Board to grant tenure, not to mention the fact that it would have been a lot easier on our families."
With respect to the second portion of plaintiff's claim, Dr. Morrow testified that the defendant Martin offered to play the tape but the audience shouted him down. He also stated that the tape contained a telephone message from a parent which was critical of the plaintiff and that Mr. Martin was attempting to use the same to show that the whole community was not supportive of plaintiff's claim.
On cross examination, plaintiff admitted that the Board did everything within its power to avoid commenting upon or revealing the reasons for their denial of his tenure and he further admitted that on December 19 the defendant Martin made statements from a prepared speech.
Plaintiff further conceded on cross examination that in his proceeding before the New York State Human Rights Commission he testified under oath that the sole reason for the denial of tenure to him by the majority of the Board was his Italian-American ancestry and he stated at the trial that he still believes this to be the fact.
Following the December 19th special meeting the defendant applied to the Lindenhurst and the Half Hollow School Districts for a position as a Junior High or High School Science Teacher and his application in each instance was denied. In this connection defendant called Joseph Maurer, Chief of the Science Department of the Lindenhurst Senior High School, who interviewed the plaintiff for a science teacher position for the second semester of 1975. Mr. Maurer testified that he had no prior knowledge of what had taken place at the defendant's school and he had heard nothing about the plaintiff or his difficulty there. In the course of the interview, plaintiff advised him that he had been coming up for tenure at the defendant school and had been recommended highly by the Superintendent of Schools but that the Board had turned him down. He told him further that he knew of no reason for this even though children of Board members had been in his class. With all this information Mr. Maurer recommended him highly for the position to the Assistant Principal of the School but that plaintiff was turned down for the reason that there was a chance that he might return to the defendant school and Lindenhurst High School did not want to gamble on this chance.
The defendant also called Mr. John C. Zino, the Assistant Principal of the Half Hollow School District, who testified that he had interviewed the plaintiff in the summer of 1974 and the plaintiff was one of a number of candidates applying for a science teacher opening in the spring of 1975. Mr. Zino said that there had been 6 or 8 candidates for the position and that he had recommended one or more of the others that were more suitable for the position and that his failure to recommend the plaintiff had nothing to do with the facts in the complaint herein.
The plaintiff himself testified that he had filed a further application with Lindenhurst School District in January 1976 but had withdrawn that application since he did not feel he could live on the salary of $30 per day.
Plaintiff also applied for a vacancy in the Sachem School District located in Holbrook, Long Island, in both 1975 and 1976 but Mr. Donald J. Fenner, the Personnel Administrator of that District, said that he had received applications from the plaintiff in each of such years along with 5,000 to 6,000 other candidates and since he had no vacancies in the science department he did not pursue the matter with him.
The defendant called witnesses from the Baldwin and Seawanhaka School Districts who testified that there had been openings for science teachers in their schools in January of 1975 for which the plaintiff did not apply. Plaintiff also admitted that he never sought a position in any Nassau County or any upstate school district because he *1068 was not interested in teaching there or anywhere else in the state outside of Suffolk County.
In addition, the Court finds as facts the statements in the following paragraphs set forth in defendants' proposed Findings of Fact Nos. 1, 2, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 25, 26, 27, 28, 29, 30, 31, 33, 34, 42, 43, 44, 54, 55, 59, 60, 64, 65, 66, 67, 69, 70, 71, 72, 79 and 81, as amended by the Court.
Based on the foregoing, the questions for this Court are: (i) whether the statement made by Mr. Martin on December 19th, that "unlike actions of the past Boards, it is not our intention to destroy anyone's reputation" stigmatizes plaintiff's reputation and seriously impairs his chance to earn a living, and/or (ii) whether the defendants conceded failure to give the plaintiff a notice of termination of employment not later than May 15, 1974, in accordance with the contract between the Union and the defendant Board of Education constituted a deprivation of any property interest without due process of law under the Fourteenth Amendment, or whether the same constituted a breach of contract with respect to which plaintiff may recover damages under the common law against the defendants.

I
With respect to the alleged statement made by Mr. Martin, we note several significant facts.
First, plaintiff testified under oath before the New York State Human Rights Commission that the sole reason for the denial of tenure by the majority of the defendant Board was his Italian-American ancestry (transcript of hearing pp. 30-31) and admitted at the trial that in reliance thereon said Commission rendered a decision reinstating him to his position with the defendant School. The Court was advised during the trial that an appeal has been taken from such decision and such appeal is pending.
Second, it is apparent that prior to the time when the statement in question was made by the defendant Martin, the plaintiff had been set up as a "pawn" by the Union and by the dissident members of the Board in an effort to force the majority members of the Board to give reasons for a denial of tenure to a probationary teacher such as the plaintiff and that through persistent badgering of the majority members to give such reasons, the defendant Martin was provoked into making the statement in question.
Third, when asked to explain this statement, the defendant Martin testified that
"Now, what I was trying to say here was not specifically Mr. Turano. Past Boards of Education have, through vindictive action, have dismissed people who were perfectly competent people.
"I won't even mention a name but we had a teacher that was, you know, a commonly accepted excellent teacher in the district and she was let go because of her political affiliations.
"And this is the type of thing that we didn't want to get involved in, discussing any reasons."
Plaintiff's counsel takes the position, nonetheless, that the only inference that may be drawn from Mr. Martin's statement is that if the reasons were made known then they would destroy the plaintiff's reputation.
The Court, however, disagrees and does not feel that the plaintiff has sustained his burden of proof on this point. Not only did the defendant Martin qualify the allegedly stigmatic statement with a specific disclaimer as to the plaintiff and with a reference to actions of past Boards but he specifically said "it is not our intention to destroy anyone's reputation". Without more the "anyone" could refer to the sources who gave the information to the majority of the Board, the dissident members of the Board, the Union officers or, as indicated by the defendant Martin, the whole statement could be (and in the light of his contemporaneous explanation was in all probability at the time) construed as nothing but a statement of policy by the new majority of the Board in the light of the actions of past Boards.
*1069 Furthermore, in Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976), the Supreme Court stated as follows:
"In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protested rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways."
While there was a claim here that the employer's motivation was to curtail the employee's constitutionally protected rights, the facts do not support such a claim as Mr. Martin in his statement said that the intention was not to destroy anyone's reputation.
In this latter connection, of substantial significance is plaintiff's sworn testimony before the New York State Human Rights Commission wherein he maintained that he was denied tenure solely because he was an Italian-American and he did not advance as a possible reason for his termination that which might have been damaging to his reputation in the possession of the majority of the Board. See Paul v. Davis, 424 U.S. 693, 709-710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), wherein the Supreme Court held that injury to reputation alone without association with the termination of employment is not sufficient. Plaintiff's position here is clearly inconsistent with the position he took before the Commission to gain reinstatement, unless we were to assume that plaintiff is arguing that his heritage was the fact that was damaging to his reputation which the Court cannot believe to be the case.
All things considered, it seems clear to this Court that this disclaimer of intention to do anyone any harm by the defendant Martin is not of such character as to constitute a stigma to the reputation or character of the plaintiff that is protectible under the Fourteenth Amendment to the United States Constitution.
In addition to the foregoing, there is no question but that plaintiff and his supporters invited and procured the comments made by Mr. Martin of which they now complain. Plaintiff's Union was concededly interested in making a cause celebre out of plaintiff's termination and together they apparently organized and participated in a protest demonstration on December 4, 1974, brought suit before the Human Rights Commission before December 19, 1974, determined to bring this case to force the giving of reasons where State law required none again before December 19, 1974, and made the repeated demands for reasons at the December 19th meeting.
Where, as here, a plaintiff has instigated the making and publication of a statement which he later alleges to be defamatory he should not be heard to complain. Gentile v. Waller (No. 76 Civ. 911) (E.D.N.Y.1976), Restatement of Torts, Ch. 25, Sec. 583, pp. 220, 222, 33 Am.Jur., Libel and Slander Sec. 93, p. 105, 53 C.J.S. Libel and Slander § 95, p. 151. In short, he is deemed to have consented thereto.
Illustration # 2 in the above cited Section of the Restatement of Torts might well have been written for this case (at p. 222):
"A, a school teacher, is summarily discharged by the school board. He demands that the reason for his dismissal be made public. B, president of the Board, publishes the reason. A has consented to the publication though it turns out to be defamatory."
Moreover, it is highly doubtful that Mr. Martin's remarks on December 19, 1974, may be said to have occurred "in the course of the termination of employment" as the cases seem to suggest is necessary. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Owen v. City of Independence, Mo., 421 F.Supp. 1110 (W.D.Mo. 1976). In the latter case the Court said (at p. 1127):
"... the evidence shows that the decision to terminate plaintiff's employment was made at least seven days prior to the ... meeting"
and accordingly were not made in the course of the termination of plaintiff's employment as required to be actionable.
*1070 Plaintiff's employment was terminated on November 26, 1974, effective January 3, 1975. As indicated, it is questionable whether the special meeting called to reconsider the vote on termination would constitute part of the "course of termination" under all the facts presented here.
Furthermore, defendants showed quite conclusively that any adverse inferences that might have been drawn by those who heard or read about Mr. Martin's comments were strictly harmless and that such dissemination, if any, as there was thereof did not foreclose or impair his opportunity to obtain or to earn a living in his chosen or some other profession. Plaintiff concededly obtained a substitute teacher's job with the Lindenhurst School District for two weeks in January of 1975 and thereafter obtained a position with the Penn Mutual Insurance Company on March 5th earning a salary plus commission at the rate of $800 per month. He continued in such job until February 1, 1976, when he obtained a comparable position with the Equitable Life Assurance Society at the same salary which he held until October of 1976.
In addition, plaintiff's efforts to obtain employment with other School Districts were minimal. In what was conceded by all to be a very "tight" market for teachers' positions, plaintiff made only two real efforts to obtain positions for which he was qualified and in both such cases he was denied the position for reasons other than the alleged "stigma", the persons involved testifying without contradiction that they either had no prior knowledge of what had taken place at defendant's school or that their decision not to hire had anything to do with the facts alleged in the complaint, or both.
Indeed in one of the two instances (Mr. Maurer), the hiring officer of the school, made inquiry of the officials of plaintiff's school and received "high recommendations."
As defendant points out, at least one Court of Appeals has employed "a practical test" in "determining the existence of a liberty interest when foreclosure of employment opportunities is alleged" and has held that "[e]vidence of [only] two attempts [as here] by appellant to secure employment does not convince us" that there was a foreclosure of employment opportunities. Weathers v. West Yuma County School Dist., 530 F.2d 1335, 1339, 1340 (10th Cir. 1976).
In short, plaintiff has failed to sustain his burden of proof on his first claim, defendants have sustained whatever burden (if any) they may be said to have, and plaintiff's first claim must therefore be, and hereby is, dismissed.

II
With respect to both parts of plaintiff's claim of failure to give notice of termination, the answer is relatively simple. Plaintiff himself conceded that the March 15th date for notification contained in the Union contract was designed for teachers whose probationary term expired in June and not in January as his did. In other words, this particular contract provision, by plaintiff's own admission, had no application to his particular situation and accordingly the same cannot be held to have been breached by the Board's failure to comply therewith.
Thus plaintiff's notice claim must also fail for this reason.
Parenthetically we might add that since, under State law, only thirty days notice was required to be given to a probationary teacher such as the plaintiff, it is questionable whether in any event a protectible property interest existed under the Fourteenth Amendment to the United States Constitution. See Ryan v. Aurora City Board of Education, 540 F.2d 222 (6th Cir. 1976).
Finally, we note as to that part of plaintiff's notice claim as may be predicated upon an alleged breach of contract, plaintiff has never complied with the provisions of Section 3813 of the New York Education Law (McKinney's Supp.1976-1977) which provides in pertinent part:
"1. No action or special proceeding, for any cause whatever, except as hereinafter *1071 provided, relating to district property or claim against the district, or involving its rights or interests shall be prosecuted or maintained against any school district, board of education, board of co-operative educational services or any officer of a school district, board of education, or board of cooperative educational services, unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."
Plaintiff admitted on the trial that he did not present (and there is no allegation in his complaint that he presented) to the defendant Board a written verified claim upon which his action is founded within three months after accrual of such claim. Presentation of such a claim is a condition precedent to the maintenance of this claim. Todd v. Board of Education of City of Syracuse, 272 App.Div. 618, 74 N.Y.S.2d 468 (App.Div. 4th Dept. 1947), aff'd 297 N.Y. 873, 79 N.E.2d 274 (1948); Hauppauge Teachers Association v. DeGennaro, Suffolk Co. Sup.Ct. # 75-18129 (Jan. 9, 1976); Widger v. Central School District No. 1, 18 N.Y.2d 646, 273 N.Y.S.2d 72, 219 N.E.2d 425 (1966).
For the foregoing reasons plaintiff's complaint must be, and the same hereby is, dismissed and judgment is awarded to the defendants with costs.
SO ORDERED.