Elmon MIMS et al.,
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF the
CITY OF CHICAGO et al.,
Defendants-Appellees.

No. 74–1534.

United States Court of Appeals,
Seventh Circuit.

Argued April 17, 1975.

Decided Sept. 24, 1975.

712

Gilbert A. Cornfield, Chicago, Ill., for plaintiffs-appellants.

Richard L. Curry, Corp. Counsel, Roseann Oliver, Asst. Corp. Counsel, Edward C. Peterson, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

TONE, Circuit Judge.

This case, on appeal for the second time, concerns the rights of female civil service employees to due process hearings prior to being laid off and presents the question of whether the layoffs were based upon sex in violation of the equal protection clause. The District Court, in oral findings of fact and conclusions of law, held for the defendants on both issues. We affirm the result.

Plaintiffs, five female employees of the Chicago Board of Education, brought this action under the fourteenth amendment of the Constitution and 42 U.S.C. § 1983 against the Chicago Board of Education, its Director of Civil Service Personnel, its Director of Visual Education, and the three members of the Chicago Civil Service Commission, individually and as members of the commission, seeking back pay, reinstatement, and costs, including attorneys' fees, for being laid off. The District Court initially dismissed the complaint for failure to state a claim upon which relief could be granted. This court reversed and remanded for trial. *Mims v. Board of Education,* No. 72–1007 (7th Cir., Nov. 10, 1972). On remand, after hearing evidence, the District Court found that the plaintiffs failed to show discrimination against them based on sex and that they had no interests under the circumstances of the case that required notice or hearings, and entered judgment for the defendants.

Plaintiffs, who were employed by the Board of Education under the job description, "Film Serviceman I," had been previously certified by the Civil Service Commission. In 1970, when, due to a loss of federal funding, a reduction in the work force became necessary, defendant Rosengarden, the Board's Director of Visual Education, determined that only fifteen persons, who were selected from a seniority list, could be retained as Film Servicemen I.[1] Plaintiffs were not within that group, and were informed at a conference on May 15, 1970, that they would be laid off as of June 26, 1970. The District Court found that these layoffs were not discharges, meaning that plaintiffs did not lose their certification status. The evidence indicates that later that year, when three of the fifteen persons who were kept on resigned, two of the plaintiffs were rein-

stated to fill the positions. It is disputed by the parties whether another plaintiff was sent or received notification concerning the position but did not respond, and whether a fourth plaintiff refused the job. The District Court found those plaintiffs who were not reinstated failed to leave adequate mailing addresses or other materials that would make it possible to notify them. The controversy before us does not concern these events, since plaintiffs do not contend that the selection of the fifteen employees on the list was influenced by their sex.

Other events gave rise to the dispute before us. The Board of Education received funding to pay the expenses of closing down the programs that were being discontinued. Six temporary employees, all males and all uncertified, were kept on to do the work. After the work was completed, they were released. The dismantling work was found by the District Court to be a different kind of work than that performed by a Film Serviceman I.

When plaintiffs learned that six men were being retained they protested to the Board of Education and the Civil Service Commission through their union representative, who sent a telegram, dated June 23, 1970, to the presidents of the board and the commission requesting that immediate action be taken and offering to appear before "the Board the Administration or any duly authorized representative which you may designate." Defendant Murphy, Director of Civil Service Personnel, wrote to the union representative, explaining that the men were retained on a "temporary basis" for "the heavy work of moving equipment." On July 31, 1970, the union representative on behalf of the plaintiffs wrote to the Civil Service Commission, sending a copy to the president of the Board of Education, protesting that they had received neither written notice nor the reasons for the layoffs "prior to the

time they were laid off" and were denied due process, and reiterating that she would be happy to appear before the board or administration. The Civil Service Commission responded through its secretary that there was nothing it could do.

Other than at the May 15 conference, plaintiffs were given no notice, hearing, or statement of reasons for their layoffs. The assistant to the Director of Civil Service Personnel testified that in 1970, the Board of Education had no written or published guidelines by which a civil service employee could seek review of a decision to lay him or her off.

When plaintiffs failed to obtain any relief as a result of their protests to the Board of Education and the Civil Service Commission, they filed this suit. As already stated, the District Court entered judgment for the defendants. On appeal plaintiffs argue that the court below committed two errors. First, they argue, the court erred in finding that plaintiffs were not discriminated against by reason of sex. Second, they argue, the court erred in its determination that plaintiffs had no property rights necessitating a statement of reasons and an opportunity to be heard prior to being laid off. On their second point we agree, but we nevertheless affirm the District Court because of plaintiffs' inability to obtain relief from the school board, since it is not a person under 42 U.S.C. § 1983, and from the individual defendants, who are entitled to official immunity because they acted in good faith.

▌ First, turning to the sex discrimination argument, we do not think that the District Court's findings were clearly erroneous. There was ample evidence to support the court's conclusion that the work done by the temporary male employees was of a different nature than that of film servicemen like plaintiffs, even though both plaintiffs and the tem-

---

1. Plaintiff Mims testified that in fact the seniority list was inaccurate and that persons certified after she was were kept on when she was laid off. The accuracy of the list is not before us, however.

porary male employees were formerly within the same job classification. The fact that several of the plaintiffs were later reinstated is of no help to plaintiffs. They were reinstated to replace certified civil servants who resigned, not to replace or work with the temporary employees who were released when the dismantlement project was completed.

■ The evidence indicates that defendant Rosengarden determined to retain the six males because he considered the temporary males able to do heavy lifting and moving that the female civil servants would be unable to do. It is reasonable to take into account the individual's physical capabilities in determining who can perform a certain kind of work. Cf. Bowe v. Colgate-Palmolive Co., 415 F.2d 711, 718 (7th Cir. 1969).

Reviewing the evidence as a whole we are not left with the conviction that a mistake has been committed. See Indiana State Employees Ass'n v. Negley, 501 F.2d 1239, 1241–1242 (7th Cir. 1974); 5A J. Moore, Federal Practice ¶ 52.03[1] (2d ed. 1974). The finding that no sex based discrimination occurred is, therefore, not clearly erroneous.

■ We do think, however, that the District Court erred in its determination that plaintiffs had no property interest entitling them to due process protection. We recognize that a layoff is less drastic than a discharge and may not require all the procedural safeguards necessary before termination through discharge. See Powell v. Jones, 56 Ill.2d 70, 81–82, 305 N.E.2d 166, 171–172 (1973). But we think that plaintiffs had a property interest in their continued active employment, not just in their status as civil servants. See Board of Regents v. Roth, 408 U.S. 564, 577–578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 601–602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Hostrop v. Board of Junior College District No. 515, 523 F.2d 569 (7th Cir. 1975). Plaintiffs at least were entitled to an opportunity to attempt to demonstrate that they were capable of performing the work assigned to the six temporary employees. Cf. Bowe v. Colgate-Palmolive Co., supra, 416 F.2d at 718. The issue of whether plaintiffs could perform the work, unlike that of the need to cut back due to loss of federal funding, was one of which plaintiffs might have been able to contribute information and valid persuasion, possibly resulting in a temporary continuation of employment. Regardless of whether Rosengarden was correct in his judgment, they were nevertheless entitled to a hearing to attempt to show he was wrong. See Hostrop v. Board of Junior College, supra, pp. 575–576. The defendant board failed in its duty to establish a procedure by which an employee could obtain review of a layoff decision to ensure that it was not for an impermissible reason or to demonstrate that he or she should have been retained, and failed to provide plaintiffs with the opportunity for such a review that due process requires.

■ The three defendants who are members of the Civil Service Commission are not, however, liable for the denial of plaintiffs' procedural due process rights. The Commission's responsibility appears to be the ministerial application of seniority rules. Neither it nor its members made the determination of which plaintiffs complain or had authority to retain or lay off employees of the Board. In addition, in any event, even if the Commission had violated plaintiffs' rights, its members would be entitled to qualified immunity, as, we hold infra, are the individual officers of the Board of Education who are named as defendants.

■ Having made the determination that plaintiffs' procedural due process rights were violated by the Board's action, we must nevertheless conclude that they are not entitled to relief in this action. Five years after the action complained of is too late to order injunctive relief to reinstate plaintiffs to their original positions, which were long since terminated, or to order the Board of Education to place them in another position. Cf. Hostrop v. Board of Junior College, supra, p. 579.

Nor are plaintiffs entitled to money damages. The Board of Education, is a body politic and corporate under the laws of Illinois. *Norfolk & W. Ry. Co. v. Board of Education,* 114 F.2d 859, 863 (7th Cir. 1940); *Board of Education v. Upham,* 357 Ill. 263, 191 N.E. 876 (1940). It is therefore not a person under 42 U.S.C. § 1983 and cannot be sued under that section. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Hostrop v. Board of Junior College, supra,* pp. 576–577. Unlike the amended complaint in *Hostrop,* the complaint here does not invoke, in the alternative, 28 U.S.C. § 1331 or allege the jurisdictional amount essential to jurisdiction under that section. Jurisdiction cannot, therefore, be predicated on section 1331.

To the extent that defendants Murphy and Rosengarden, rather than the Board of Education, might be responsible for not granting plaintiffs a hearing, they are immune from damages under the Supreme Court's recent pronouncement on the scope of immunity, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1973).[2] Although that case dealt only with members of a school board, the Court itself recognized that immunity has been given a broader scope, to encompass other school officials. 420 U.S. at 315, 95 S.Ct. at 997. Murphy and Rosengarden were school officials who, if they acted in good faith, would be entitled to immunity, since they acted within the scope of their official duties.

Under the test enunciated in *Wood v. Strickland, supra,* 420 U.S. at 321–322, 95 S.Ct. at 1000–1001, defendants did act in good faith. There is no basis in the record for any contention that they acted maliciously or with intent to deprive plaintiffs of their constitutional rights. Nor can it be said that at the time of the events in issue defendants

should have known of the existence of constitutional rights that were being violated. As we pointed out in *Hostrop v. Board of Junior College, supra,* pp. 577–578, the law as it existed in 1970 would not have given school officials notice that they would have to hold a hearing prior to terminating an employee. Neither *Board of Regents v. Roth, supra,* nor *Perry v. Sindermann, supra,* had been decided. The need for a hearing prior to a layoff was even less apparent. There was nothing in the procedures of the Board of Education or the Civil Service Commission that would indicate to them that they were under any such duty.

Since plaintiffs are not entitled to relief, the judgment of the District Court is affirmed.

Affirmed.

---

2. Although these defendants did not clearly articulate an immunity argument here, they pleaded immunity in their answer, and if we were to remand, they would presumably rely upon that defense. The same may be said of the individual defendants who are members of

the Civil Service Commission. A reviewing court may affirm on any ground that finds support in the record. *Helvering v. Gowran,* 302 U.S. 238, 245–246, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *Reinstine v. Rosenfeld,* 111 F.2d 892, 894 (7th Cir. 1940).