Pamela NEWBORN, Plaintiff,

v.

Farries MORRISON, Director of Personnel, Springfield Public Schools, Leroy Jordan, Past President, Board of Education, Springfield Public Schools, Richard P. Klahn, Superintendent of Schools, Springfield, Illinois, Phillip Schmidt, Principal Lanphier/Edison Complex, Springfield, Illinois, Board of Education of Springfield, IL Public School District No. 186, Carmen Woods Chapman, President, Board of Education of Springfield, IL Public School District No. 186, Henry R. Kloppenburg, Leo J. Havey, Jr., Robert H. Goldman, Vice-President, John P. Hayes, Michael Belletire, Members of the Board of Education of Springfield, IL Public School District No. 186, Defendants.

No. 77–3100.

United States District Court,
S. D. Illinois, S. D.

Nov. 25, 1977.

624

Patrick T. Murphy, Goldberg & Murphy, Ltd., Chicago, Ill., for plaintiff.

Thomas F. Londrigan, Londrigan & Potter, P.C., John A. Billington, Billington & Billington, Springfield, Ill., for defendants.

ACKERMAN, District Judge.

Plaintiff was employed to teach in the Springfield Public Schools. At that time, and continuing to the present, she was married to Curtis Plott, who is the Executive Secretary of the Illinois Education Association (I.E.A.). The I.E.A. is an association of Illinois teachers which was involved in organizing Springfield teachers in their contract negotiations with the Springfield Board of Education. Plaintiff claims that the defendants refused to renew her teaching contract solely because of their animosity towards her husband for his activities on behalf of the I.E.A. Newborn contends that non-renewal of her contract for this reason is constitutionally impermissible. This action was brought under 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. §§ 1331 and 1343 seeking equitable relief and damages. Defendants have moved to dismiss on several alternative grounds.

## I.

### Failure to State a Cause of Action Under §§ 1983 and 1985

It is essential under Sections 1983 and 1985 that plaintiff show a deprivation of a right, privilege, or immunity and that it be secured by the United States Constitution or laws of the United States.[1] For purposes of this motion to dismiss I must assume that, as the complaint alleges, the sole reason for the non-renewal was defendant's animosity toward plaintiff's husband who was an officer in the I.E.A. Thus this motion stands or falls on whether it is constitutionally permissible for defendants not to renew plaintiff's teaching contract solely because of lawful actions or associations of her spouse.

The defendants could not refuse to renew plaintiff's contract based on her membership or legal activities in a teachers' union, *McLaughlin v. Tilendis*, 398 F.2d 287 (7th Cir. 1968), and therefore the crucial question becomes, what provision of the Constitution prohibits this action by public officials based on the associational activities of plaintiff's spouse? The plaintiff contends that it is her rights to freedom of speech, privacy, and association within the marital contract as protected by the First, Ninth and Fourteenth Amendments. Since no specific provision of the Constitution prohibits the acts complained of, an analysis is required to determine if by reasonable construction such a prohibition can be implied.[2]

Although the Constitution does not explicitly mention any right of privacy, the

---

[1] Since she was a non-tenured employee plaintiff cannot assert that she had a right to continued employment, a statement of reasons for non-retention, nor a right to a due process hearing prior to non-renewal. See *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, she can assert that her non-renewal was based solely on a reason that infringes her constitutionally protected interests. It is clear under *Perry v. Sindermann*, 408 U.S. 593, 597–598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), that her lack of a contractual or tenure right does not defeat her claim. See also, *Mt. Healthy School Dist. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

[2] I recognize that judges are not free to declare actions unconstitutional merely because they are thought unreasonable, unwise, arbitrary, capricious or irrational. As the Supreme Court

found in *Bishop v. Wood*, 426 U.S. 341, 349–350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976):

The Federal Court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official actions was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

United States Supreme Court has recognized that such a right does exist. *Roe v. Wade,* 410 U.S. 113, 152–156, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The constitutional source has varied, but it has continually been held that the only rights guaranteed are those deemed "fundamental" or "implicit in the concept of ordered liberty." *Roe v. Wade, supra,* at 152, 93 S.Ct. at 726. As stated in *Roe,* the decisions make it clear:

> [T]hat the right has some extension to activities relating to marriage, *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); procreation, *Skinner v. Oklahoma,* 316 U.S. 535, 541–542, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); contraception, *Eisenstadt v. Baird,* 405 U.S. at 453–454, 92 S.Ct. 1029, 31 L.Ed.2d 349; *id.,* at 460, 463–465, 92 S.Ct. 1029 (White, J. concurring in result); family relationships, *Prince v. Massachusetts,* 312 [321] U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); and child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), *Meyer v. Nebraska,* 6 [262] U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

■ It is my opinion that marriage is clearly a fundamental right and is entitled to the guarantee of privacy expressed in *Roe* and *Griswold v. Connecticut,* 381 U.S. 479, 484–486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, it is not clear how that privacy is being invaded by the state in this case. The constitutional violation allegedly committed here is easier understood in discussing plaintiff's right of association.

■ The Constitution does not explicitly mention a right or freedom of association, but such a right clearly exists under the First Amendment. *Griswold v. Connecti-*

*cut, supra.* It seems to me beyond question that the relation of husband and wife is a protected association. *See,* e. g., *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), *Griswold, supra; Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). As stated in *Griswold, supra,* 381 U.S. at 486, 85 S.Ct. at 1682.

> Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths, a bilateral loyalty, not ·commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.

■ It is recognized that even the rights of privacy and association in the marital relationship are subject to some state regulations, for example laws prohibiting marriage between persons because of consanguinity and requiring parental consent for marriage up to a certain age. But where such "fundamental rights" are involved, the Supreme Court has held that regulation [3] limiting these rights may be justified only by a "compelling state interest."

■ Plaintiff had a right to associate with and marry whomever she pleased subject to legitimate state regulations. She exercised those rights and entered a marital relationship. In her complaint in this case she claims that school officials are now penalizing her for exercising such rights by refusing to renew her contract. That action is constitutionally impermissible absent a compelling state interest. As was stated in *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972):

Since plaintiff here claims that her employer was motivated by a desire to curtail or penalize the exercise of her constitutionally protected rights it is necessary to look at the rights asserted.

**3.** *It is not significant that the conduct complained of here was not done under a statute authorizing dismissal for an unconstitutional reason but rather was the decision of individuals acting under color of state law. The Teacher Tenure Law, Ill.Rev.Stat. ch. 122 §§ 24–11*

and 24–12, which allows dismissal for any reason in order to give the Board of Education maximum flexibility in dealing with probationary teachers, cannot be a license to violate an individual's constitutional rights. See also, Ill. Rev.Stat. ch. 122 § 10–22.4 wherein it specifically states that marriage is not a cause of removal. While arguably this provision goes to marital status, i. e., married or unmarried, it also demonstrates a legislative awareness that marriage is a protected association.

For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible.

I have arrived at my conclusion, based on the assumed facts, by applying recognized constitutional rights to a somewhat novel situation. The novelty is that plaintiff here is arguably an "indirect victim." From the alleged facts it can be inferred that it was actually Curtis Plott's right of association with the I.E.A. which was sought to be curtailed or penalized by this action against his wife. Since Plott was not employed by the School Board, no direct pressure could be applied to him; however, the pressure could be applied to him indirectly through his marital partner. Mr. Plott is not a party to this lawsuit and thus any violation of his rights is not in question. The issue arises as to whether plaintiff can assert a right not to be a "victim" of an attempt to curtail her spouse's associational rights with third parties. This is particularly true, where as here, there is nothing in the record to show Plott's actions were not protected under the First Amendment, and that in fact plaintiff could not have been penalized for doing the same acts herself (see *Tilendis, supra*). Rather than answer the "indirect victim" question, I have chosen to directly analyze plaintiff's own rights.

The alleged actions of defendants have had a direct effect on plaintiff and her rights. She has been deprived of continued employment based on her constitutionally protected marital association with Curtis Plott. While Plott's associational rights may have also been indirectly violated, it seems to me plaintiff's marital rights were directly penalized. Thus it is plaintiff's own marital association rights which I have found were injured if defendants' actions are proven to be as alleged. Whether the general associational right is so "fundamental" as to warrant constitutional protection in other than marital relationships is left to future cases (e. g., whether one could be fired for actions of one's mother, in-laws, friends, etc.)

In view of the foregoing, defendant's motion to dismiss is denied. The procedure we must follow in this case was established in *Mt. Healthy City Board of Education, supra*:

(1) Initially the plaintiff must show her conduct was constitutionally protected and that this conduct was a "substantial" or "motivating factor" in the Board's decision not to rehire her. For purposes of this motion only it was assumed that her marriage was the sole reason for dismissal and that there is no compelling state interest in support of that reason. I have decided that if that is proven, it violated plaintiff's constitutional rights.

(2) If plaintiff carries her burden, the Board must then show by a preponderance of the evidence that it would have reached the same decision as to plaintiff's re-employment, even in the absence of the protected conduct.

## II.

### Exhaustion of State Remedies

The second basis for dismissal is that plaintiff has not exhausted her administrative remedies before proceeding on this federal action. In *United A., A., & A.I.W. of America v. State Farm Mutual Auto Ins. Co.*, 350 F.Supp. 522, 527 (N.D.Ill.1972), the various rules of exhaustion and abstention

regarding a Section 1983 action were discussed. Assuming there are times in which a court should force a plaintiff to exhaust his state administrative remedies in order to avoid a constitutional question, *Elmwood Properties, Inc. v. Conzelman*, 418 F.2d 1025 (7th Cir. 1969), the present case is not one of them. Here plaintiff does not have the elaborate administrative review as in *United A., A., & A.I.W. of America*. Under the Teacher Tenure Law, Ill.Rev.Stat. ch. 122 §§ 24–11 and 24–12, the probationary teacher is only entitled to a written notice 60 days before the end of the school term telling her whether or not she will be reemployed for the following term. It has not and cannot be contended that this administrative remedy is adequate in view of the serious constitutional violations alleged. This basis of dismissal is denied.

### III.

### Insufficient Class Animus for Section 1985

■ As a third basis for dismissal the defendants assert that the Section 1985 claim must fail because there is no class based discriminatory conduct alleged. Plaintiff admits this to be correct as to a conspiracy of strictly private individuals, but argues a contrary result where the conspiracy involves state officials under color of state law. After reviewing the applicable cases including *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), and *Potenza v. Schoessling*, 541 F.2d 670 (7th Cir. 1976), I agree with the defendant that the necessary class-based invidiously discriminatory animus behind the conspirators' actions is missing and dismiss the count based on Section 1985(3).

### IV.

### Springfield School Board as a "Person" Under §§ 1983 and 1985

■ Defendant contends that the Board of Education is a municipal corporation and thus not amenable to suit under 42 U.S.C. §§ 1983 and 1985, citing *Mims v. Board of Education of the City of Chicago*, 523 F.2d 711 (7th Cir. 1975). Plaintiff responds that *Mims* is inapplicable because Chicago is a statutorily created municipal corporation while the defendant here is not. Despite defendants' persuasive arguments and citations reflecting a trend in Illinois state court which interprets boards organized under Section 10–10 to be municipal corporations, this Court is bound by the interpretations of the Court of Appeals for the Seventh Circuit. That Court in *Aurora Educational Association East, et al, v. Board of Education of Aurora Public School District No. 131 of Kane County, et al*, 490 F.2d 431 (7th Cir. 1973) and *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, n. 2 (7th Cir. 1975), noted that boards organized pursuant to Ill.Rev.Stat. ch. 122 § 10–10 were not municipal corporations under Illinois law.

More persuasive is defendant's attempt to establish itself as a municipal corporation through statutory construction. Plaintiff argues that even though the Springfield Board, as a Special Charter District, may have such *powers* it does not necessitate the conclusion that the Board acquired the *status* of a municipal corporation.

The critical difference is between the clear statutory assertion of the Chicago Board of Education's corporate status, Ill. Rev.Stat. ch. 122 § 34–3, and the circuitous fashion in which I am asked to infer such status for the Springfield Board (i. e., Springfield Board is not under Section 10–10 since it is a Special Charter District; its powers and duties are controlled by §§ 32–2.5 and 32–4.8; Section 32–4.8 gives the Board "all the powers of trustees of schools in school townships, and all the powers of boards of directors;" Section 5–2 then defines the powers and duties of school trustees and states they "shall be a body politic and corporate" and "such corporation shall have perpetual existence, with power to sue and be sued . . . ." The logic is thus: since they have powers of trustees and since trustees are a body politic and corporate, then the Springfield Board is a body politic and corporate.)

While my initial reaction is that defendant is correct, this matter of statutory construction does not appear dispository of the present motion to dismiss. Even if this Court were to find that the School Board is not a person for purposes of Section 1983, jurisdiction over the Board is proper as plaintiff has alleged jurisdiction pursuant to 28 U.S.C. § 1331. See discussion *infra*.

## V.

### Damage Awards Allowable Under Section 1983

■ Defendants contend that since the School Board is statutorily required to indemnify its members who are sued for civil rights damages, no damages may be awarded against the individuals because it would come out of the public treasury and violate the Eleventh Amendment. In support of this defendant cites *Monell v. Department of Social Services of City of New York*, 532 F.2d 259 (2nd Cir. 1976) and *Muzquiz v. City of Antonio*, 528 F.2d 499 (5th Cir. 1976). Both cases are distinguishable from the situation presented here. In *Monell* the defendants were being sued only in their official capacities, while here they are being sued in both their individual and official capacities. *Muzquiz* is also distinguishable in that the court there was concerned that if they allowed the action to proceed then the bar created by judicial interpretation of Section 1983 would be effectively eliminated. This was so because any action which sought restitution against a "non-person" could be framed in terms of mandatory injunction against the officials responsible for the fund from which restitution was sought.

Since this suit is seeking damages against the members of the Board in their individual capacities, an award of damages under § 1983 is appropriate. Also instructive is footnote 3 in the case of *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 577 (7th Cir. 1975). There it was stated that "the Eleventh Amendment does not effect this suit [under § 1331]. The Illinois Legislature, by permitting the board to be sued 'in all courts,' appears to waive any

immunity a board would otherwise have. Moreover, the Eleventh Amendment does not extend immunity to political subdivisions of the state." *See also Mt. Healthy City Board of Education v. Doyle, supra.*

## VI.

### Possibility of Asserting Jurisdiction Under Section 1331 Without Limitations by Sections 1983 and 1985.

■ The question posed here was explicitly not decided by the Supreme Court in *Mt. Healthy*: whether since Congress in Section 1983 has expressly created a remedy relating to violation of constitutional rights under color of state law, one seeking to recover for such violations is bound by the limits contained in Section 1983 whatever jurisdictional section he invokes? Alternatively, whether the court should as in *Bivins v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), imply a cause of action directly from the Fourteenth Amendment which would not be subject to the limitations contained in Section 1983. Since the Supreme Court refused to decide the issue, we must look to the precedent of the Court of Appeals for the Seventh Circuit. In the case of *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 577 (1975), the Court found that "plaintiff having alternatively [to § 1983] invoked 28 U.S.C. Section 1331, . . . and the requisite jurisdictional amount being concededly present, the board can be sued under that statute," citing *Calvin v. Conlisk*, 520 F.2d 1, 8–9 (7th Cir. 1975); and *City of Kenosha v. Bruno*, 412 U.S. 507, 514, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). *See also Williams v. Brown*, 398 F.Supp. 155 (1975); *Collum v. Yurkovich*, 409 F.Supp. 557 (1975). Accordingly, the cause of action against the school board under Section 1331 may be maintained without relying on Sections 1983 and 1985. For a contrary decision see *Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977). The court in *Hogg* specifically mentions its awareness that the Seventh Circuit created such a right of action in *Hostrop*. *Id.* at n. 4.

## VII.

### Punitive Damages

██ As stated in *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir. 1974), punitive damages are recoverable under federal law in a Section 1983 action provided certain aggravating circumstances are shown. See also *Morales v. Haines*, 486 F.2d 880, 882 (7th Cir. 1973). Based on what is before me at this point, I agree with the conclusion in *Spence* that:

We do not suggest that the plaintiff ultimately will be able to prove facts entitling her to actual or punitive damages or even that summary judgment procedures may not develop a lack of liability under § 1983 on the part of some or all the defendants. We merely hold that the complaint contains sufficient allegations with regard to damages, regardless of whether the state or the federal rules on damages are applied, to withstand a motion to dismiss which here was broadly sweeping as to all defendants.

## CONCLUSION

For the reasons outlined above, the following orders have been entered:

1. Defendants' motion to dismiss for failure to state a cause of action under §§ 1983 and 1985 is denied.

2. Defendants' motion to dismiss for failure of plaintiff to exhaust administrative remedies is denied.

3. Defendants' motion to dismiss the § 1985 claim for lack of the necessary class animus is allowed.

4. Defendants' motion to dismiss the Springfield School Board as a party defendant to the §§ 1983 and 1985 counts is denied.

5. Defendants' motion to deny any monetary damage awards against the individuals in either their individual or official capacities is denied.

6. Defendants' motion to dismiss on the basis that a cause of action under § 1331 must be limited by §§ 1983 and 1985 is denied.

7. Defendants' motion to disallow any recovery of punitive damages is denied.