**Angel L. ORTIZ MEDINA, Plaintiff,**

v.

**Cirilo TIRADO DELGADO, et al., Defendants.**

**Civ. No. 86–0022 (JP).**

United States District Court, D. Puerto Rico.

April 13, 1987.

Pedro Miranda Corrada, San Juan, P.R., for plaintiff.

Esteban J. Nuñez, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for injunctive relief and damages brought under 42 U.S.C. section 1983, where plaintiff alleged violation of his constitutional rights to freedom of belief and association and to due process under the law. This Court has jurisdiction over the subject matter of the complaint under 28 U.S.C. section 1331 and 1343(3) and (4).

This case was tried without a jury, where both parties presented witnesses. Upon conclusion of the trial, the parties submitted the case to this Court for adjudication. Based on the evidence submitted by the parties and after due deliberation, this Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff Angel L. Ortiz Medina has been a career employee with the State Insurance Fund (SIF) for the last three years. His first position was in the Department of Services Against Drug Addiction in the Treasury Department. He rose through the ranks until he attained the position in question, the Chief of the Treasury Division. He obtained higher level positions through competitive procedures, including examinations and the completion of a two-year probationary period. He is an active member of the New Progressive Party (hereinafter "NPP"), and his political affiliation was well known by co-workers in the SIF. Ortiz was a candidate for Assemblyman for the Municipality of Caguas in the last general elections. He has a Bachelor's Degree in business administration with a major in accounting, and has credits towards a Master's Degree.

2. All codefendants held managerial positions with the SIF. Cirilo Tirado Delgado has been, since May 20, 1985, the Administrator of the SIF. Dolores Rivera Hernández is the Director for the Bureau for Services to Employees and Injured. Aureo Rivera Alejandro is the Humacao Regional Director of the SIF. Manuel Machin Lebrón is the Chief of the Insurance Division.

3. All defendants are members of the Popular Democratic Party (hereinafter "PDP"), the political party whose candidate, Rafael Hernández Colón, was elected Governor of the Commonwealth of Puerto Rico in the General Elections held on November 6, 1984. The NPP lost the control of the Executive Branch of the Commonwealth Government which it held for the previous eight years. Defendant Tirado Delgado was appointed Administrator after Governor Hernández Colón took office on January 2, 1985. Tirado Delgado appointed all the other defendants to their positions after he became the Administrator.

4. At the time of the change of government, plaintiff's career position was Chief of the Treasury Division of the Humacao

Region. Under the administrative supervision of the Regional Director and under the technical and operational supervision of the Treasury Area Director, plaintiff was performing the following functions:

a) Directing, supervising and coordinating the activities of the sections of Payment, Collections, Attachments and Delivery of Checks at the regional level, and issuing the necessary orders for efficient operations.

b) Controlling all fiscal aspects pertaining to the delivery of compensation checks, payments of trip fares to injured collection and deposit of public funds, and collecting late accounts at the Regional level.

c) Preparing all reports requested from him.

d) Verifying that the use of public funds is done according to the laws, regulations, norms and established procedures.

e) Performing or participating in technical or fiscal training programs to improve work efficiency.

f) Advising the Regional Director and all other employees of the Regional Office with relation to fiscal matters.

g) In coordination with the System Office, writing and preparing procedures that speed up the regional operations.

h) Submitting recommendations to the Area Director of the Treasury Department regarding complex problems in his work area.

i) Studying the requests of Internal Auditing and of the Controller's Office and making follow up reports.

j) Writing and answering correspondence.

k) Participating in the selection, orientation, training and evaluation of the employees assigned to the division.

l) Representing the Area Director of the Treasury Department and/or the Regional Director, at their request, in official duties of the agency.

Before his demotion, plaintiff supervised sixteen employees and controlled a yearly budget of more than 13 million dollars, and had an office, secretary, and telephone.

5. By letter dated December 2, 1985, plaintiff was demoted from Chief of the Treasury Division to Chief of the Payroll and Checks Distribution. In this latter position, plaintiff's functions were mainly clerical in nature, such as handling fare checks for injured employees. He was assigned to a smaller, less adequately equipped office, with neither a secretary nor a telephone. No person replaced plaintiff in the position of Chief of the Treasury Division; rather, the functions and duties of that position were assigned to other personnel in the Sub-Region of Caguas, Puerto Rico, who are members of the PDP. Defendants neither met nor consulted with plaintiff, nor did they provide him with a written list of charges or a hearing prior to demoting him.

6. Plaintiff requested both verbally and in writing the reason for the demotion, but received no answer. Once demoted, he requested his new work functions as Chief of Payroll and Checks Distribution, but they were never assigned to him. He has, in effect, no definite assignment.

7. Defendants purported reason for demoting plaintiff was a reorganization of the agency. However, defendant neither prepared a reorganization plan nor a reorganization chart. No written job description of his new position was prepared in an OP-16 form or otherwise.

8. All defendants knew that plaintiff is a member of the NPP. In addition, defendant Cirilo Tirado Delgado had actual knowledge of the actions of his subordinates in demoting plaintiff.

9. As a consequence of the discriminatory changes in Ortiz's tasks, plaintiff's image in the community and before his fellow workers has been tarnished. His emotional tranquility has been affected, he has suffered great mental anxiety, and he cannot sleep without pills. He has lost weight, his attitude towards attending his work has been adversely affected, and he has been exposed to the mockery and scorn of fellow workers since his demotion, during every day of work. Imagine a U.S. District Judge demoted to Magistrate hav-

ing to go to the courthouse every day under this new arrangement and having to work under these circumstances with his past and present fellow workers and public. This would be a very distressing situation.

## CONCLUSIONS OF LAW

To prevail in an action brought under section 1983, two essential elements must be proven: (1) that the conduct complained of was committed by a person or persons acting under color of state law; and (2) that this conduct deprives a person or persons of rights, privileges, or immunities secured by the constitution or law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

The first prong of the *Parratt* test requires a showing of a causal connection between defendants' acts under color of law and the alleged injuries. In the case before us, there is ample evidence on the record supporting such a showing and defendants have presented insufficient evidence to controvert this showing. We therefore find, as a matter of law, that defendants acted under color of law as detailed in the findings of fact, causing the injuries stated in the findings of fact.

The second prong of the section 1983 analysis involves the determination whether the defendants' conduct deprived the plaintiff of his rights under the Constitution or laws of the United States. Plaintiffs have alleged violations of both their first amendment rights to freedom of association and their fourteenth amendment right to procedural due process.

1. *First Amendment Right to Freedom of Association*

■ As evidenced by the findings of fact, plaintiff has established a prima facie case of political discrimination. The evidence reveals that defendants demoted plaintiff, a member of the NPP, relieving him of his duties, functions and responsibilities and reassigning him tasks which are incompatible with and inferior to his career position, while assigning his previous duties and functions to personnel who are members of the PDP and in lower positions than plaintiff. In addition, discriminatory motive is well supported by the record. It shows from the record that the changes in plaintiff's tasks were due to the PDP victory in the elections, and that defendants jointly participated in and approved defendant's Cirilo Tirado Delgado's conduct.

Secondly, defendants have presented no viable alternative reason for their conduct which would bring their actions under the analysis of *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). We therefore find that the sole basis for defendants' conduct was plaintiff's political association with the NPP.

■ Defendants contend that they have total and absolute discretion in assigning duties and functions to the personnel in the Region and Sub-Region. However, we find no credible justification in taking away important tasks which entail a high degree of supervision and control of the agency's functions, and re-assigning those tasks and functions to other personnel, under color of a reorganization in the agency. The unrefuted evidence shows that after the reorganization defendants provided no written job description for plaintiff's new position. This reorganization was merely a pretext to infringe plaintiff's rights as a career employee.

The purpose behind defendants' conduct in this case was to demonstrate that the power to hire, fire, manage, supervise and otherwise control employment resided in a particular political party rather than in a particular new administration. In order to accomplish such purpose, defendants had to discriminate against plaintiff because of his political belief and in so doing, defendants knowingly and intentionally harrassed and abused plaintiff in violation of his constitutional rights. This has been done by taking away from him the imprint of authority which carries with it the respect of subordinates, and by telling him that those not affiliated with the PDP do not deserve the respect their positions entail. The message sent to the community in general was that they must cater to the politicians of

the victorious party. All this was done with political gain as the only purpose in mind. As a result of being able to control the administration through such conducts, defendants intend to put themselves on a position to make new converts to their party, thus affecting the result of the 1988 election and perpetuating themselves in power.

The government established by the founders of our nation is a government run for the benefit of all the people, not for the purpose of perpetuating the political party in power. Executive officials who insist on violating the civil rights of government employees to replace them with their "cronies" only prove that they have put their desire to stay in power and in office ahead of all other considerations in a manner reminiscent of a "president for life" syndrome. These motives and actions contravene the constitutional mandate which aims for the continuity of democracy and, above all, the preservation of freedom.

The negative effects of patronage practice on the free and efficient functioning of our government has been vigorously noted by the highest courts of the United States and Puerto Rico. *E.g., Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Juan Hermán Colón v. Corporación de Renovación Urbana y Vivienda,* 84 JTS 52 (P.R.1984). The threat latent in conditioning public employment on partisan support is well expressed in *Elrod.* First, the practice exacts a ruthless toll on the individual employee's ability to act according to his beliefs and to associate with others of like political persuasion, thus diminishing support for his political party. *Elrod,* 427 U.S. at 355–6, 96 S.Ct. at 2680–81. Secondly, the free functioning of the electoral process suffers because competing political interests are not supported. The Supreme Court aptly stated the problem:

> Conditioning public employment on partisan support prevents support of competing political interests. Existing employees are deterred from such support, as well as the multitude seeking jobs. As government employment, state of federal, becomes more pervasive, the greater

the dependence on it becomes, and therefore the greater becomes the power to starve political opposition by commanding partisan support, financial and otherwise. Patronage thus tips the electoral process in favor of the incumbent party, and where the practice's scope is substantial relative to the size of the electorate, the impact on the process can be significant.

### 2. *Fourteenth Amendment Right to Procedural Due Process*

■ As stated in the findings of fact, plaintiff was demoted without prior opportunity to be heard. Furthermore, plaintiff requested the reasons for his demotion, but none were given. The issue is whether the due process clause applies, and if so, what process was due. In determining whether due process safeguards apply to the case before us, we must inquire whether plaintiff had a property right implicated under these circumstances. A property interest may be created by "existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). The plaintiff was a "career" employee as defined by the Puerto Rico Personnel Act. 3 L.P.R.A. § 1349. Career employees may be removed only upon a showing of "good cause" and after notice of written charges. 3 L.P.R.A. § 1336(4) (Supp.1985). Career employees have a property interest in continued employment. *Loudermill,* 105 S.Ct. at 1491–2. Thus, we conclude that the plaintiff had a property right in his continued employment arising under Puerto Rico law. Furthermore, this property right encompasses the interest in continued *active* employment in their rightly-assigned duties. *See Mims v. Bd. of Educ. of City of Chicago,* 523 F.2d 711, 715 (7th Cir.1975) (laid-off employees have property interest in continued active employment, not just in status as civil servants).

■ Once a property interest is triggered, the minimal amount of due process required under the Due Process Clause is

pre-deprivation notice and an opportunity for a hearing, however informal that opportunity may be. *Loudermill,* 105 S.Ct. at 1493. Plaintiffs in our case had no notice prior to defendant's reassignments, and certainly no opportunity to respond before or after the change in their duties. However, the proper remedy in this case is not an injunction awarding further process. *Cf. Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). Rather, it is injunctive relief granting reinstatement under our First Amendment holding and an award of damages as set out below.

### 3. *Qualified Immunity Defense*

Defendants claim they are protected by the defense of qualified immunity. In actions brought under 42 U.S.C. § 1983, a qualified immunity from liability for damages is available to state executive officers performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The analysis as to whether the law was clearly established at the time of the conduct at issue requires two steps: (1) whether the official's conduct violated a constitutional or statutory right that was clearly established at the time and, if so, (2) whether the official reasonably should have known that his acts violated a constitutional or statutory right. *De Abadía v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986). In the context of a patronage dismissal, we must determine whether the position at issue relates to partisan political interests, and if so, whether the responsibilities of the position resemble that of a policy maker, one privy to confidential information, a spokesman or other office holder whose functions would require political affiliation. *Jiménez-Fuentes v. Torres Gaztambide,* 803 F.2d 1, 6 (1st Cir.1986).

■ Plaintiff's duties and functions did not require party affiliation for their effective performance. His responsibilities, though supervisory, were administrative and technical in nature, involving budgetary matters. His primary responsibilities prior to his demotion involved the direction and supervision of all fiscal matters, preparation of reports, interpretation of norms and regulations and the study of internal auditing reports. Thus, whatever policy making, if any, occurs in plaintiff's job must relate to the fiscal needs of the treasury division and not to any partisan political interests. Nor can we envision any access to confidential information of a partisial political nature mandated by plaintiff's tasks. The facts show that his position and its corresponding functions cannot properly be characterized as requiring political affiliation to the party in power. Accordingly, defendants are not entitled to qualified immunity, for we cannot say that at the time of the demotion the law was clearly established that the defendants could require the Chief of the Treasury Division of the Humacao Region of the SIF to be a politically sensitive job.

### 4. *Relief*

#### a) *Injunctive Relief*

■ In an action brought under section 1983, equitable relief in the form of a permanent injunction is proper. *E.g., Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). In this action, the appropriate injunctive remedy for a demotion based on a first amendment violation is reinstatement of the plaintiff to the duties of his career position.

#### b) *Damages*

■ Liability under section 1983 may be rooted in negligence alone. *Parratt v. Taylor,* 451 U.S. 527, 532–35, 101 S.Ct. 1908, 1911–13, 68 L.Ed.2d 420 (1981); *see also Fernández v. Chardón,* 681 F.2d 42, 55–7 (1st Cir.1982). We hold, however, that defendants intentionally discriminated against plaintiff. Because defendant Cirilo Tirado Delgado refused to use his powers to correct the situation, even when asked, he is liable along with other defendants for the discriminatory actions outlined in the findings of fact.

It follows as a matter of course that the plaintiff is entitled to recover compensatory damages from the defendants who deprived him of his constitutionally protected rights. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Fernández v. Chardón*, 681 F.2d at 60. If proven, compensatory damages are available under section 1983 for emotional and mental distress. *Carey v. Piphus*, 435 U.S. 247, 263–4, 98 S.Ct. 1042, 1052–53, 55 L.Ed.2d 252 (1978). Plaintiff has proven emotional and mental distress resulting from the deprivation of his constitutional rights as stated in the findings of fact and he is entitled to recover damages from the defendants.

Punitive damages are available under section 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Defendants have met this standard. They relieved plaintiff of his duties and responsibilities. They maliciously refused to consider or take corrective action. Defendant Cirilo Tirado Delgado showed callous indifference by likewise refusing to correct the situation. This Court finds that plaintiff is entitled to punitive damages.

Finally, plaintiff is entitled to attorney's fees pursuant to the express provision of 42 U.S.C. section 1988. Plaintiff must submit a detailed petition within thirty (30) days.

Judgment will be entered accordingly.

IT IS SO ORDERED.