In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2007

WILLIETTE PRICE, on behalf of herself and
all persons similarly situated

*Plaintiff-Appellant*,

*v.*

BOARD OF EDUCATION OF THE CITY OF
CHICAGO and BARBARA BYRD-BENNETT,
in her official capacity,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-cv-4463 — **Edmond E. Chang**, *Judge*.

ARGUED JANUARY 22, 2014 — DECIDED JULY 2, 2014

Before WOOD, *Chief Judge*, and MANION and WILLIAMS,
*Circuit Judges*.

WILLIAMS, *Circuit Judge*. Williette Price was part of a massive economic layoff of Chicago Public Schools ("CPS") teachers in 2010. She argues that, as a tenured teacher, she had a property interest in continued employment as a teach-

er anywhere within CPS before being laid off, and that the Board of Education violated the Due Process Clause by depriving her of that property interest. Because Price cannot point to any source that gives her the type of property interest she asserts, we affirm the lower court's decision to dismiss her complaint for failure to state a claim.

## I. BACKGROUND

This case was decided on a motion to dismiss, and so we recite all the factual allegations in the light most favorable to the non-moving party, Williete Price. *See Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110, 1115 (7th Cir. 2013).

In 2010, Price was a full-time tenured CPS teacher who was working in a city-wide program to improve the classroom teaching skills of other teachers. In all of her evaluations, she was rated excellent or superior.

In June 2010, the Board of Education (the "Board") authorized then-CPS CEO Ron Huberman (who has since been substituted by his replacement, Barbara Byrd-Bennett, in the complaint) to "honorably discharge" what turned out to be roughly 1,289 public school teachers, some of whom were tenured. At the same time as the layoffs, Price alleges CPS was continuing to hire teachers to fill vacant positions, including new hires with no prior classroom experience or prior evaluations. Price alleges that she was not considered for any of these vacant positions, nor was she given any notice of existing vacant positions prior to her layoff. She further alleges the Board did not implement procedures to allow laid-off tenured teachers to show they were qualified to fill those vacant positions.

Price filed a 42 U.S.C. § 1983 suit one year after the layoffs on behalf of herself and a putative class of other similarly situated teachers. The district court stayed the case while we considered a related action, *Chicago Teachers Union, Local No. 1 v. Board of Education*, 640 F.3d 221 (7th Cir. 2011), which we discuss in more detail below. After that case was decided, Price filed her first amended complaint, asserting a violation of due process. After a motion by the Board, the district court dismissed that complaint because Price did not identify any protected property interest that could give rise to a due process claim. This appeal followed.

## II. ANALYSIS

Price argues that her complaint should not have been dismissed because the Board violated the Due Process Clause of the United States Constitution when it laid off her and other similarly situated tenured teachers without considering them for open positions that they were qualified to fill. She alleges in her complaint that she and the other tenured teachers had a protectable interest "to fill or transfer into any existing open or vacant position [within CPS] for which they were qualified" prior to the layoffs. We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo. *See Craig*, 736 F.3d at 1115. We construe all factual allegations and any reasonable inferences in the light most favorable to the nonmoving party, Price. *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. While there are both procedural and substantive components of the Due Process Clause, Price only raises issues of procedural due process, and so we need not

consider substantive due process concerns. "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. Accordingly, a plaintiff asserting a procedural due process claim must have a protected property interest in that which [she] claims to have been denied without due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (internal quotations omitted). "Although the Fourteenth Amendment protects property rights, it does not create them. Instead, property rights 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract …" *Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010).

To prevail on her due process claim, Price needs to identify a source, independent of the Due Process Clause, for the protectable property interest she claims to have. Towards that end, it is vital to understand what interest Price alleges she has, and what she has not alleged. While at times Price argues that the property interest at issue is continued employment generally, her complaint demonstrates she is alleging a more specific right. Price is alleging that by virtue of being tenured, a teacher in CPS has a permanent property interest in filling *any* existing open or vacant position in CPS for which she was qualified at the time of her layoff, even if

it was not the position that teacher previously filled. She alleges in her complaint that "[b]efore they could be subject to layoff at all, plaintiff and other tenured teachers were entitled to be considered for and to fill such positions for which they were qualified in preference to any such non-tenured applicants." This entitlement, she argues in her opening brief, "is not a 'permanent appointment' to teach a particular class in a particular school, or to hold a particular line item budgeted position, but a permanent appointment to teach *anywhere* in the Chicago public schools" before being laid off. So long as there is some vacant job out there in CPS for which Price is qualified, she claims she has a property interest in that job and must be given her due process before she can be laid off.

The question facing Price is: What is the source of that alleged right? Price points to 105 Ill. Comp. Stat. 5/34-84, the Illinois tenured teacher statute, which, in relevant part, states:

> Appointments and promotions of teachers shall be made for merit only, and after satisfactory service for a probationary period of … 4 years … during which period the board may dismiss or discharge any such probationary employee upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools and after which period appointments of teachers shall become permanent, subject to removal for cause in the manner provided by [105 Ill. Comp. Stat. 5/34-85].

Although the district court also considered 105 Ill. Comp. Stat. 5/34-18(31) as a source of Price's alleged right, Price does not point to that section in her briefing and therefore

we need not consider it. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (noting arguments that are "under-developed, conclusory, or unsupported by law" are waived). Nor does Price point to any other "statute, regulation, municipal ordinance, or an express or implied contract, such as 'rules or understandings'" that create such a property right. *Covell*, 595 F.3d at 675-76. So, her case hinges on section 34-84.

We considered section 34-84 prior to the instant case in *Chicago Teachers Union, Local No. 1 v. Board of Education*, 640 F.3d 221 (7th Cir. 2011) ("*CTU I*"). In *CTU I*, a divided panel held that tenured teachers had a property right that afforded them a meaningful opportunity to show that they were qualified for new vacancies for a reasonable time after being laid off. However, we vacated *CTU I* in *Chicago Teachers Union, Local No. 1 v. Board of Education*, 662 F.3d 761 (7th Cir. 2011) (per curiam) ("*CTU II*"), and certified three questions to the Illinois Supreme Court, including: "Does section 34-84 give laid-off tenured teachers either (1) the right to be re-hired after an economic layoff, or (2) the right to certain procedures during the rehiring process? If so, what is the scope of that right?" *Id.* at 764-65.

In considering the certified questions, the Illinois Supreme Court rejected the argument by the Teachers Union that "solely 'by virtue of the teacher's permanent appointment' under section 34-84, a laid-off tenured teacher has the substantive right to continued employment in preference to an equally or less qualified new teacher without experience, and 'should have a preferential right to a vacant position over an equally or less qualified new teacher without experience.'" *Chi. Teachers Union, Local No. 1 v. Bd. of Educ.*, 963

N.E.2d 918, 924 (Ill. 2012) ("*CTU III*"). The Illinois Supreme Court began its analysis by examining a previous version of section 34-84, which contained a "reserve teacher" clause. *Id.* at 924-25. Under that pre-1995 version of section 34-84, the "reserve teacher" clause allowed those teachers who would have been laid off or whose positions were to be eliminated for reasons other than cause to remain on the Board's payroll for 25 months as "reserve teachers" and entitled them to interim teaching positions and appointments to vacancies for which they had proper certification. *Id.* (citing *Land v. Bd. of Educ. of the City of Chi.*, 781 N.E.2d 249 (Ill. 2002)). In other words, "reserve teachers" were entitled to a right akin to that Price now seeks to assert: before being laid off, they could fill any positions for which they had proper certification.

However, the Illinois legislature amended section 34-84 in 1995 and removed all "statutory references to 'reserve teachers,' deleting the language regarding layoffs and recall from section 34-84." *Id.* at 925. The Illinois Supreme Court held that the amendment "reflects a clear legislative intent to change the statutory rights of tenured teachers in a layoff … [T]he General Assembly's removal of layoff and recall procedures from section 34-84 eliminated any substantive rights arising from section 34-84 for tenured teachers to be rehired after an economic layoff." *Id.* at 925. By "deleting the layoff provision from section 34-84 … the legislature gave the Board the authority to formulate and implement its own rules and procedures regarding layoffs rather than binding the Board to a legislatively mandated procedure." *Land*, 781 N.E.2d at 256. Based on *CTU III*, we ordered the district court to vacate the preliminary and permanent injunctions requiring the Board to promulgate recall regulations because of the "Illinois Supreme Court's express determination that

the relevant School Code provisions do not give rise to the substantive property rights sought by plaintiffs." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ.*, 476 Fed. Appx. 83, 84 (7th Cir. 2012) (unpublished).

The Illinois Supreme Court's decisions in *Land* and *CTU III* therefore stand for the proposition that tenured teachers do not have a protected property interest in getting rehired or in filling vacant positions for which they are qualified *after* being laid off. Price argues that she is not bound by either of those decisions because the property interest she is pointing to is the right to fill any vacant positions *before* being laid off. Yet, as noted by the district court, the reasoning behind both of the Illinois Supreme Court's decisions is equally applicable to a pre-layoff right as a post-layoff right. Where section 34-84 once had a "reserve teacher" clause that allowed for a teacher to keep her salary and fill vacancies before being laid off, the legislature's decision in 1995 to remove that clause and any language relating to layoffs was a conscious decision to alter the protectable interests vested in tenured teachers. Stated another way, the Illinois legislature previously instilled in tenured teachers the right to be considered for jobs anywhere within CPS prior to being laid off. That was the purpose of the "reserve teacher" clause and references to layoffs in section 34-84. By deleting those provisions, the Illinois legislature made a conscious decision to redefine what interests a "permanent" or tenured teacher has, and that includes abolishing the right Price now seeks to assert.

Had Price's claim arisen before the 1995 amendments, she might have had an argument because of the "reserve teacher" clause and the references to layoffs. However, after the

1995 amendments, tenured teachers no longer have a property interest in their jobs that allows them to seek out and fill any vacancies in CPS before being laid off. Because section 34-84 no longer provides for this right, Price's due process argument fails.

As the Board notes, this result is confirmed by the legislature's provisions for how a principal may recommend appointment of new teachers. Also as part of the same 1995 amendments, the General Assembly provided that "[t]he school principal shall make the decision in selecting teachers to fill new and vacant positions consistent with Section 34-8.1." 105 Ill. Comp. Stat. 5/34-84. Section 34-8.1 states that principals should recommend the hiring of teachers based on "merit and ability" and "without regard to seniority or length of service." 105 Ill. Comp. Stat. 5/34-8.1. If tenured teachers have the property right Price now asserts—to continued employment in any vacant position within CPS before being laid off—then principals would not have the discretion given to them by section 34-8.1. Instead, they would *have to* appoint teachers pursuant to seniority and length of service whenever there was an opening.

Price's citations to *Mims v. Board of Education*, 523 F.2d 711 (7th Cir. 1975) and *Harbaugh v. Board of Education*, 716 F.3d 983 (7th Cir. 2013) do not help her. In *Harbaugh*, we stated that "[a] tenured teacher may be *fired* only for cause … conferring a legitimate expectation of continued employment and thus a protected property interest that may not be *terminated* without due process." *Id.* at 986 (emphasis added, internal citation omitted). *Harbaugh*, in which we were discussing generally what constitutes a tenured teacher and not the property rights that attach to that tenured status, is distin-

guishable because that case involved a teacher who was fired, not laid off. Neither party here disputes that tenured teachers cannot be *fired* without cause under section 34-84. Whereas someone is usually fired because of "'shortcomings or deficiencies' in an employee's actual job performance … [l]ayoffs, on the other hand, are unrelated to actual job performance [and] customarily occur[] as the result of such outside forces as economic decline, reorganization or the abolition of job positions." *Land v. Bd. of Ed.*, 757 N.E.2d 912, 921 (Ill. App. Ct. 2001) (citation omitted), *rev'd on other grounds by Land*, 781 N.E. 2d at 260. The Illinois Supreme Court has drawn a sharp distinction between the firing and laying off of tenured teachers, *see Land*, 781 N.E. 2d at 256 and *CTU III*, 963 N.E.2d at 925, and we will defer to its interpretation of section 34-84. *Harbaugh* does not unearth the property interest Price is asserting.

In *Mims*, we dealt with a completely different statutory scheme, namely the property interest that civil servants have in continued employment. 523 F.2d at 713 (noting plaintiffs were civil servants who held "Film Serviceman I" positions). Though we did not explicitly state the source of the property interest, our citation to *Powell v. Jones*, 305 N.E.2d 166 (Ill. 1973), which in turn cites to the former version of the Illinois Civil Service Personnel Code (20 Ill. Comp. Stat. 415/1, *et seq.*) and the Personnel Department Rules and Civil Service Commission Rules promulgated pursuant to that former version of the Code, makes clear that the right alleged in *Mims* came from statutes unrelated to section 34-84. Contrary to what Price argues, *Mims* does not stand for the proposition that the Due Process Clause creates a federal source of property rights that must be protected. The Due Process Clause does not create protected property interests. Rather,

it merely provides an avenue to ensure property rights created elsewhere are protected. *Frey Corp.*, 735 F.3d at 509-10. Therefore, pointing to any property interest the plaintiffs in *Mims* had does nothing to support Price's argument. Price has the burden of identifying a "statute, regulation, municipal ordinance, or an express or implied contract, such as 'rules or understandings that secure certain benefits and that support claims of entitlement.'" *Covell*, 595 F.3d at 675-76. She has not met that burden.

Finally, Price's citation to other cases around the country relating to the rights of "tenured" teachers does not aid her quest, either. The interests bestowed upon a tenured teacher are specific to the terms of employment. For example, what it means to be a tenured teacher at CPS is different than in certain other, smaller cities or towns in Illinois, where there is the right to recall for tenured teachers who were laid off. *See CTU III*, 963 N.E.2d at 925-26 (citing 105 Ill. Comp. Stat. 5/24-12). And those "tenured" teachers throughout Illinois might have different rights than a teacher in Indiana, or Wisconsin, or some other state, or teachers working in colleges, universities or other institutions. That a teacher is "tenured" or "permanent" does not guarantee anything by its very terms; the question is what property interests actually come along with being tenured in that specific situation. Here, the tenure provision does not provide the interest Price seeks or alleges. Her due process claim therefore fails.

Because Price fails to point to any source for the property right she alleges exists, we need not consider what process she is entitled to protect that right. Finally, we need not consider Price's argument that the layoffs were in bad faith, since that claim was not properly raised in her complaint.

Though she states generally in her complaint that "the original layoffs should not have occurred," she does not allege any "bad faith" cause of action or any other cause of action except for the due process deprivation we have discussed. Therefore any bad faith challenge is not properly before us. *See Anderson v. Donahoe*, 699 F.3d 989, 997-98 (7th Cir. 2012) (noting party waives causes of action not asserted in complaint but raised for the first time in briefing).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.